158 P.3d 1238 (2007)
STATE of Washington, Respondent,
v.
Janae White Eagle WE, Appellant.
No. 24047-9-III.
Court of Appeals of Washington, Division 3.
May 22, 2007.
*1240 David N. Gasch, Gasch Law Office, Spokane, WA, for Appellant.
Brian Clayton O'Brien, Spokane County Prosecuting Attorney, Spokane, WA, for Respondent.
SWEENEY, C.J.
¶ 1 This is an arson prosecution. The State's expert arson investigator testified that the defendant burned her apartment for insurance fraud. No one objected or asked for a curative instruction at trial. Here on appeal, the defendant contends this was an inadmissible opinion of her guilt and that this is an error of constitutional magnitude. We conclude that the opinion was an appropriate expert opinion. And the circumstantial evidence of the defendant's culpability, even without the opinion, was sufficiently overwhelming to render any error, assuming error, harmless. We therefore affirm the conviction. We also affirm the sentencing court's imposition of restitution.

FACTS
¶ 2 A jury convicted Janae We of first degree arson for burning the duplex she lived in. The State had charged her with causing the fire "with intent to collect insurance proceeds." Clerk's Papers (CP) at 2. Ms. We lived in the duplex. Sidiq Dar owned the duplex. Mr. Dar usually lived in the other side of the duplex. But he was in Florida for the winter. And Ms. We knew it. The fire destroyed the half of the duplex Ms. We lived in. Ms. We intentionally started this fire on March 22, 2003. Her lease was up at the end of March 2003.
¶ 3 Experts on both sides agreed the fire was intentionally started. The essential factual question at trial was who started the fire. The source of ignition was candles. Candles are a delayed ignition device. That is, they allow the arsonist to leave the scene before the fire fully ignites. Investigators discovered two separate major areas where the fire started, one in the garage and one at the bottom of the basement stairs. But other fires had been started in the basement. Candles were located under combustible material in the south, center, and north bedrooms. Ms. We left the duplex shortly before the fire was discovered by a passerby. And she locked the door before she left. The garage had been on fire for 10 to 15 minutes before it was reported at 11:30 P.M.
¶ 4 Ms. We bought renter's insurance and insurance on her 1977 Land Cruiser on October 2 or 3, 2002, about six months before the fire here. A representative from that insurance company met with Ms. We and took a statement from her following the fire. Ms. We's values of a number of items had changed from the time she bought the renter's policy to the time she submitted her claims. One category on the policy was collections. When Ms. We applied for the insurance she set the value of her collections at $2,000. But she claimed a loss of between $7,000 and $8,000 because of a Picasso etching and a Bunka cross-stitching on linen. The policy included a category for fine arts. Ms. We originally listed the total at $20,000 but now claimed $25,000. Computer and computer equipment that she originally valued at $5,000 was now claimed as a loss of $10,800. Business property originally valued at $5,000 was now claimed as a loss of close to $30,000. And the Land Cruiser Ms. We paid $5,000 for was valued at $9,167.51. She claimed a total of $101,184.46 for damage to personal property as a result of the fire.
¶ 5 The State showed that the primary source of Ms. We's money, a modest trust, would last another six months at the rate at which she was depleting it. And Ms. We's spending exceeded her income.
¶ 6 Captain Michael Zambryski investigated the fire. He is a fire investigator for the Spokane Fire Department. He testified at trial that Ms. We had the motive, the opportunity, and the means to start the fire. He testified that her motive was insurance fraud.

DISCUSSION
¶ 7 On appeal Ms. We predicates her primary assignments of error on Captain Zambryski's testimony that the motive for setting the fire was insurance fraud. She did *1241 not, however, object to that testimony at trial. Nor did she ask for a curative instruction following his testimony. She asserts instead that the error is manifest constitutional error that we can and should address in the first instance here on appeal. Alternatively, she asserts that her lawyer did not effectively represent her because he failed to object to Captain Zambryski's testimony at trial. Again the claim is that this error ineffective assistance of counselis an error of constitutional magnitude. And so Ms. We urges us to address the question despite the failure to do anything about it in the trial court.
¶ 8 Each of Ms. We's assignments of error (manifest constitutional error or ineffective assistance of counsel) requires a showing of two traits common to each. First, Ms. We must show error. State v. Barr, 123 Wash. App. 373, 380, 98 P.3d 518 (2004); State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995). Here, that means she must show that Captain Zambryski's testimony was, first of all, inadmissible opinion testimony. And, second, she must show that the outcome of this trial would have been different had his opinions been excluded. State v. Warren, 134 Wash.App. 44, 57, 138 P.3d 1081 (2006) (manifest constitutional error); State v. Hakimi, 124 Wash.App. 15, 22, 98 P.3d 809 (2004) (ineffective assistance of counsel).
MOTIVE
¶ 9 We cannot help but take notice that the trial judge presiding over this almost two-week jury trial was not given the chance to make the discretionary decision whether to admit this opinion evidence. State v. Stenson, 132 Wash.2d 668, 701-02, 940 P.2d 1239 (1997). Nor could he, of course, consider the necessary factors preliminary to admitting or excluding the evidence.[1]
¶ 10 This highlights for us the problem inherent in appellate second guessing of questions on the admissibility of evidence when the trial judge has not been given the opportunity to pass on these questions in the first instance.[2] Whether or not to admit evidence is a very contextually driven decision. It depends on the case. And that is precisely why it is a decision vested in the discretion of the trial judge. State v. Thomas, 150 Wash.2d 821, 856, 83 P.3d 970 (2004). This is not to say that we should refuse to review assignments of obvious error with palpable consequences. Of course we should. But we are a court of review. That means we are in the business of reviewing decisions made by some trial judge. We are not in the business of making these decisions in the first instance.
RELEVANCY
¶ 11 Again, the admissibility of evidence is within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse. Barr, 123 Wash.App. at 380, 98 P.3d 518. Abuse occurs only where discretion is exercised on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 12 "To be relevant, evidence must meet two requirements: (1) the evidence must have a tendency to prove or disprove a fact (probative value) and (2) that fact must be of consequence in the context of the other *1242 facts and the applicable substantive law (materiality)." State v. Baldwin, 111 Wash. App. 631, 638-39, 45 P.3d 1093 (2002), aff'd, 150 Wash.2d 448, 78 P.3d 1005 (2003). And certainly in an arson case, opportunity and motive tend to show that the acts of the defendant were willful and criminal. State v. Picard, 90 Wash.App. 890, 901, 954 P.2d 336 (1998). And therefore evidence tending to show opportunity and motive are relevant.
¶ 13 The significant factual issue in this case was what motive Ms. We would have for burning her apartment. She presented evidence and argued that she had enough money to support herself. The State showed that her resources were limited and that her money would soon run out.
EXPERT OPINION TESTIMONY
¶ 14 Here, the State alleged in its information that Ms. We started this fire "with intent to collect insurance proceeds." CP at 2. Certainly an issue for a fire investigator is why. That is, what is the motive for wanting to destroy one's own property?
¶ 15 An expert can testify in the form of an opinion. ER 702. The decision whether to admit expert testimony is within the trial court's discretion. State v. Swan, 114 Wash.2d 613, 655, 790 P.2d 610 (1990). Evidence is admissible under ER 702 if the witness qualifies as an expert and the expert testimony would be helpful to the jury. State v. Baird, 83 Wash.App. 477, 484-85, 922 P.2d 157 (1996).
¶ 16 Neither a lay nor an expert witness can, however, testify that a defendant is guilty. State v. Olmedo, 112 Wash. App. 525, 530, 49 P.3d 960 (2002). But an opinion is not improper because it involves ultimate factual issues. And "[t]estimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704; Olmedo, 112 Wash.App. at 531, 49 P.3d 960. The expert's opinion must be based on the evidence and the expert's experience and not the defendant's credibility. Baird, 83 Wash.App. at 485, 922 P.2d 157. And that is what we have here.
¶ 17 Ms. We testified she had enough money. And implicit in that was that she had no motive to defraud the insurance company. She testified about a confrontation with an unknown person interested in buying her car. And implicit in that testimony was that this other person had a motive to torch her apartment.
¶ 18 The State qualified Captain Zambryski as an expert fire investigator. And Ms. We did not challenge his qualifications at trial nor does she do so here on appeal. He then expressed opinions based on the evidence that Ms. We's motive was "[i]nsurance fraud." Report of Proceedings at 502. He investigates fires. His job is then to assemble and analyze facts on three questions: opportunity, means, and motive. Those are the factual issues in an arson case.[3] Here specifically, did Ms. We have the opportunity to commit this crime? Did she have the ability to commit this crime? And, the bone of contention here, did she have a motive to commit this crime? And while his testimony certainly cast doubt on Ms. We's version of events (specifically that she had enough money and no need to defraud the insurance company), it is not an opinion on her guilt or innocence. And had the trial court been give the opportunity to pass on the admissibility of that opinion, we would have affirmed an exercise of discretion admitting the opinion on Ms. We's motive. See RAP 2.5(a); State v. Wilber, 55 Wash.App. 294, 298-99, 777 P.2d 36 (1989) (analyzing officers' testimony as to witness's credibility as improper expert opinion testimony under ER 702 and not of "constitutional magnitude," and stating that "[a]rguably, the officers' opinions are also, inferentially, opinions on the defendant's *1243 guilt. However, to take such an expansive view of the prohibition against opinion testimony on the guilt of a defendant is unnecessary").
¶ 19 Captain Zambryski did not tell the jury what result to reach. He did not offer an opinion as to Ms. We's credibility nor do his opinions rely upon her credibility. He simply said based on his investigation that she had a motive to torch her apartment. That motive was insurance fraud. His opinions support the jury's conclusion that she was guilty of arson. But that does not make them improper opinions on guilt. Baird, 83 Wash.App. at 486, 922 P.2d 157.
¶ 20 There is, then, no manifest constitutional error nor can we say that counsel's conduct fell below some objective level of professional norms. In fact, counsel's failure to object is completely understandable. The evidence was admissible.
HARMLESS ERROR
¶ 21 Constitutional errors may be harmless. State v. Moses, 129 Wash.App. 718, 732, 119 P.3d 906 (2005), review denied, 157 Wash.2d 1006, 136 P.3d 759 (2006); State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985). We assume that "`the damaging potential of the [inadmissible testimony was] fully realized.'" Moses, 129 Wash.App. at 732, 119 P.3d 906 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). We then ask whether we can nevertheless say the error was harmless beyond a reasonable doubt. Moses, 129 Wash.App. at 732, 119 P.3d 906 (quoting Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431). The error was harmless if the untainted evidence was so overwhelming that it necessarily would lead to a finding of guilt. State v. Davis, 154 Wash.2d 291, 305, 111 P.3d 844 (2005), aff'd, ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).
¶ 22 Here, even absent Captain Zambryski's opinion that Ms. We's motive was insurance fraud, the evidence meets this stringent criteria.
¶ 23 The fire here was clearly the result of arson. And Ms. We does not argue otherwise. Ms. We was running short of money. In fact, her lawyer elicited testimony from the State's forensic expert that her outgo exceeded her income by about $600 per month. Her tenancy was due to end nine days after the fire started. She had purchased renter's insurance only six months before the fire started. She made claims far in excess of the original values she ascribed to her property when she bought the renter's insurance. The other occupant of the duplex was out of town. And Ms. We knew he was out of town. She was at her apartment at about the time the fire started. There was no other credible culprit. All of this evidence is untainted by the opinion of Captain Zambryski, and it is overwhelming evidence of her guilt. Any error, even assuming error, would have been harmless.
RESTITUTION
¶ 24 Ms. We first argues that the amount of restitution ordered is excessive. We review a challenge to the amount of a restitution order for abuse of discretion. State v. Davison, 116 Wash.2d 917, 919, 809 P.2d 1374 (1991). "An abuse of discretion occurs only when the decision or order of the court is `manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" State v. Enstone, 137 Wash.2d 675, 679-80, 974 P.2d 828 (1999) (internal quotation marks omitted) (quoting State v. Cunningham, 96 Wash.2d 31, 34, 633 P.2d 886 (1981)).
¶ 25 A trial court's authority to impose restitution is purely statutory. Davison, 116 Wash.2d at 919, 809 P.2d 1374. The court is required to order restitution when the offender is convicted of an offense which results in damage to or loss of property. RCW 9.94A.753(5). Ms. We did not dispute the computation of the restitution amount or the sufficiency of the evidence to support it.
¶ 26 Ms. We next argues that the court should have considered her ability to pay. She is mistaken. Consideration of the defendant's ability to pay applies to the setting of the minimum monthly payment, not to the setting of the total restitution amount. RCW *1244 9.94A.753(1);[4]State v. Huddleston, 80 Wash. App. 916, 928-29, 912 P.2d 1068 (1996); see also RCW 9.94A.753(4) (permitting the trial court to modify the amount, terms, and conditions of restitution, but the total amount of restitution ordered may not be reduced based on the offender's inability to pay the total amount). The court then appropriately refused to consider Ms. We's ability to pay when setting the total amount of restitution owed.
¶ 27 The court did not abuse its discretion.
STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW
¶ 28 Ms. We asserts ineffective assistance of counsel in her statement of additional grounds for review. She asserts that counsel failed to place the appropriate amount of emphasis on certain testimony; failed to object to testimony; failed to ask the appropriate questions of witnesses; failed to counter the State's evidence; failed to contact, interview, and subpoena witnesses; failed to conduct a thorough investigation; and failed to provide her with discovery.
¶ 29 To prevail on a claim of ineffective assistance of counsel, Ms. We must establish both deficient performance and resulting prejudice. McFarland, 127 Wash.2d at 334-35, 899 P.2d 1251. "There is a strong presumption that trial counsel's performance was adequate, and exceptional deference must be given when evaluating counsel's strategic decisions." State v. McNeal, 145 Wash.2d 352, 362, 37 P.3d 280 (2002).
¶ 30 Based on the record submitted, Ms. We's complaints relate to tactical decisions. See State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996) (decisions concerning methods of examining witnesses are trial tactics); State v. Krause, 82 Wash.App. 688, 697-98, 919 P.2d 123 (1996) (decision to call a witness is a trial tactic); State v. Madison, 53 Wash.App. 754, 763, 770 P.2d 662 (1989) (decisions when or whether to object are trial tactics). Some of Ms. We's complaints relate to circumstances outside our record. The proper avenue for bringing claims based on evidence outside the record is through a personal restraint petition, not an appeal. McFarland, 127 Wash.2d at 335, 899 P.2d 1251.
¶ 31 Ms. We also challenges the sufficiency of the evidence. Her sole argument is that the State presented only circumstantial evidence of her involvement. As noted by the Washington Supreme Court: "Arson is an offense which is most often proved by circumstantial evidence." State v. Young, 87 Wash.2d 129, 137, 550 P.2d 1 (1976). It is a crime of particularly secret preparation and commission, and the State can seldom produce witnesses to the actual setting of such a fire. Id. Still, "a well-connected train of circumstances may be as satisfactory as an array of direct evidence" in proving the crime of arson. Id.; State v. Plewak, 46 Wash.App. 757, 765, 732 P.2d 999 (1987). Circumstantial evidence is sufficient to convict in an arson case.

HOLDING
¶ 32 We affirm the conviction and award of restitution.
I CONCUR: BROWN, J.
SCHULTHEIS, J. (dissenting).
¶ 33 Captain Michael Zambryski testified that it was Janae We who had the opportunity and means to carry out the fire and, based on financial information he received, she was motivated to do so by insurance fraud. This is an improper opinion of guilt and a manifest constitutional error that was not harmless error. Alternatively, the failure to object constitutes ineffective assistance of counsel. I also agree with Ms. We's contention that the trial court erred in ordering the minimum monthly restitution payment because the figure was based on the untenable reason that the total restitution must be paid within *1245 25 years. I must therefore respectfully dissent.

OPINION AS TO GUILT
¶ 34 To determine whether a manifest error exists, we ask: (1) does the alleged error present a constitutional issue, (2) did it have practical and identifiable consequences, (3) what are the merits of the constitutional issue, and (4) was the error harmless. State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992).
¶ 35 Improper opinion testimony violates a defendant's right to a jury trial and invades the fact-finding province of the jury. State v. Dolan, 118 Wash.App. 323, 329, 73 P.3d 1011 (2003). Since testimony concerning an opinion on guilt violates a constitutional right, it generally may be raised for the first time on appeal. State v. Florczak, 76 Wash.App. 55, 74, 882 P.2d 199 (1994); State v. Carlin, 40 Wash.App. 698, 700 P.2d 323 (1985), overruled on other grounds by City of Seattle v. Heatley, 70 Wash.App. 573, 854 P.2d 658 (1993); State v. Saunders, 120 Wash.App. 800, 811, 86 P.3d 232 (2004); Dolan, 118 Wash.App. at 329, 73 P.3d 1011; State v. Demery, 144 Wash.2d 753, 759, 30 P.3d 1278 (2001); see RAP 2.5(a)(3).
¶ 36 The error had practical and identifiable consequences in this case because the fire examiner had a "special aura of reliability." Demery, 144 Wash.2d at 765, 30 P.3d 1278. A government official's testimony often carries a special aura of reliability and trustworthiness and therefore may be particularly prejudicial. State v. Barr, 123 Wash. App. 373, 381-82, 98 P.3d 518 (2004); Demery, 144 Wash.2d at 765, 30 P.3d 1278. Further, there were no eyewitnesses and the State presented only circumstantial evidence. The error was manifest and constitutional.
¶ 37 To determine whether a witness statement is impermissible opinion testimony, our courts consider: (1) the particular circumstances of the case, (2) the type of witness involved, (3) the nature of the testimony and charges, (4) the types of defenses, and (5) the other evidence before the trier of fact. Heatley, 70 Wash.App. at 579, 854 P.2d 658.
¶ 38 Captain Zambryski testified here that when performing a fire investigation, he looks for three components: means (the capability of the person to start the fire), opportunity (the time to carry out the fire), and motive (the reason behind starting the fire). As for means, Captain Zambryski testified that Ms. We was physically capable of carrying out the fire and she told him the materials to do so were in the home. For opportunity, he stated that the duplex owner was in Florida, there was no one other than Ms. We in the duplex, and the area itself was isolated and even more so at night.
¶ 39 Concerning motive, the State asked:
Q And based upon your investigation and your training and experience, who had the motive to set this fire?
A The defendant.
Report of Proceedings (RP) at 500. The State inquired about the financial records Captain Zambryski reviewed and examinations under oath conducted by the insurance company. The examination continued:
Q Did those examinations have any bearing as part of your determination of motive?
A Yes, they did.
Q Did the financial records that you reviewed, as well as the summaries of the financial records, have any bearing on your determination of motive?
A Yes.
Q And what did you determine to be the defendant's motive for this fire?
A Insurance fraud.
RP at 501-02.
¶ 40 The crime of first degree arson, as it was charged here, requires a finding that the defendant caused the fire with the intent to collect insurance proceeds. RCW 9A.48.020(1)(d). Although motive is not an essential element of the offense, that term was not defined for the jury, and motive is so closely associated with the element of intent, the two would be virtually indistinguishable to the jury.[1]
*1246 ¶ 41 The fire captain's statements on motive were direct opinions of guilt. Taken as a whole, his testimony constituted a direct and clearly identifiable conclusion that Ms. We committed the arson and her reason was to collect insurance money. These are conclusions for the jury. It was improper for Captain Zambryski to make them.
¶ 42 A similar view was held by a majority of the Idaho Supreme Court in State v. Walters, 120 Idaho 46, 813 P.2d 857, 868 (1990) (Boyle, J., specially concurring).[2] In Walters, an arson defendant claimed, as Ms. We does here, that the failure to object to an arson expert's opinion of guilt was both ineffective assistance of counsel as well as a fundamental error affecting a constitutional right that could be raised for the first time on appeal. The court ruled that the conviction could be reversed on either ground. Id. at 870. I agree.
¶ 43 As in this case, in Walters, a state fire investigator testified that he thought the defendant started the fire and then he supported the opinion with his reasons that he thought the defendant intentionally set it. Id. at 872 (Bakes, C.J., dissenting). The Walters dissent perceived that the testimony was not a statement of guilt because the fire expert did not say that the defendant was "guilty." Id. at 872 n. 5. This is the premise upon which the majority opinion in this case is based.
¶ 44 The majority in Walters correctly noted:
While an expert may, as here, testify that in his opinion a fire was "deliberately set" and that it was "a case of arson," these opinions are permissible because they are the "ultimate issues" within the expert's expertise as contemplated under [Idaho Rule of Evidence] 704. However, if we allow an expert on the cause of fires to weigh the evidence and testify as to who he believes is guilty of the crime of arson, we would be allowing the "expert" to leave the realm of his expertise and invade the province of the jury. The jury alone has the responsibility to weigh the evidence and conclude the "ultimate issue" of guilt or innocence.
Walters, 813 P.2d at 868 (Boyle, J., specially concurring) (emphasis omitted).
¶ 45 I agree with the majority here that opinion testimony from which the jury can infer guilt, elicited by a question that seeks a factual opinion on an ultimate issue rather than a conclusion as to the ultimate issue, does not constitute a comment on guilt. But a direct or an implicit statement of guilt, elicited in a manner that seeks a conclusion on the ultimate issue rather than a factual opinion on the ultimate issue, is a comment on the defendant's guilt. Accord Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 344, 858 P.2d 1054 (1993) ("Legal opinions on the ultimate legal issue before the court are not properly considered under the guise of expert testimony."). See, e.g., State v. Garrison, 71 Wash.2d 312, 315, 427 P.2d 1012 (1967) (holding that asking the proprietor of a burglarized tavern whether or not he thought the defendant was one of the parties who participated in the burglary was a question calculated to elicit an opinion on whether or not the appellant was guilty); State v. Haga, 8 Wash. App. 481, 490, 492, 507 P.2d 159 (1973) (holding that an ambulance driver's testimony implied his opinion that a murder defendant was guilty where the prosecutor's questions were phrased to elicit a conclusion rather than facts from which the jury could decide).
¶ 46 The State's examination was not phrased to present testimony that the fire had to be caused by someone under certain conditions; the State asked who it was and Captain Zambryski said it was Ms. We. The *1247 State did not ask if Ms. We had a motive to carry out the fire; the State asked and Captain Zambryski responded that she had the motive to do it.
¶ 47 I disagree that Captain Zambryski's testimony is admissible. ER 704 allows for the admission of an opinion or inference on an ultimate issue that the trier of fact must decide provided that the opinion or inference is otherwise admissible. Heatley, 70 Wash. App. at 578-79, 854 P.2d 658. To be otherwise admissible, opinion evidence must also satisfy ER 403, ER 701, and ER 702. Id. at 579, 854 P.2d 658.
¶ 48 The record shows that Captain Zambryski was testifying as an expert under ER 702. "But the expert testimony of an otherwise qualified witness is not admissible if the issue at hand lies outside the witness' area of expertise." State v. Farr-Lenzini, 93 Wash.App. 453, 461, 970 P.2d 313 (1999) (citing Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha, 126 Wash.2d 50, 103-04, 882 P.2d 703, 891 P.2d 718 (1994)). The defense objection to Captain Zambryski's testimony regarding the financial analysis was sustained because the State had a qualified expert in that area. The court ruled that Captain Zambryski was not an expert on finances. He certainly was not then qualified to testify as an expert on financial motivation. See id. (holding police officer was not qualified to testify as an expert on the driver's state of mind).
¶ 49 The error in this case was not harmless. In its appellate brief, the State conceded to numerous shortcomings in Captain Zambryski's investigation that were addressed on the record. These shortcomings highlight the witness's failure to consider other suspects and that his focus was solely on Ms. We. And that reinforces the conclusory opinion he offered concerning Ms. We's guilt. The untainted evidence, because it is circumstantial and there are no eyewitnesses, would not overwhelmingly lead to a conviction.
¶ 50 The court in Walters also held that under the circumstances, both prongs of the Strickland test were met, i.e., deficient performance and resulting prejudice.[3] As to the first prong, the court noted:
Trial counsel's inexplicable failure to object to [the fire expert's] extremely damaging opinion that the defendant was guilty of setting the fire was an error so serious that we rule that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. Trial counsel's failure to object to [the fire expert's] damaging opinion is on par with the failure by counsel . . . to suppress the damaging testimony of [a police officer].
Walters, 813 P.2d at 867.
¶ 51 On the second prong, the majority held:
When an arson expert declares that it was the defendant who set the fire in the house, there can be little doubt that the jury was impressed and influenced by the authoritative statement. Had [the fire expert] been prevented from declaring his damaging opinion, there is at the least a reasonable probability that the outcome of the proceeding would have been different.
Id. at 867-68.
¶ 52 The court held that the probability that a different result would occur was sufficient to undermine the confidence in the outcome. Id. at 867 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). Considering the absence of eyewitnesses or confessions, the court held that "it is impossible to say that the accusation by the arson expert did not have a substantial influence on the verdict." Id. at 868. The same is true here.
¶ 53 I would therefore reverse because the testimony was an improper opinion of guilt and not harmless error and/or ineffective assistance of counsel.

RESTITUTION
¶ 54 Ms. We argues that the calculation of the minimum monthly payment was improper because the court did not follow the restitution statute. The trial court ordered amortization *1248 of the total restitution amount plus statutory interest over 25 years. That ultimately resulted in payments of $2,718.88 per month for 25 years. Significantly, the trial court did not participate in setting the minimum monthly amount. The prosecutor made the computations and prepared the order.
¶ 55 The amortization in and of itself is not inappropriate. It would be a proper exercise of discretion to require an early restitution payoff under proper circumstances. But the 25-year payment period in this case was based on the incorrect assumption that the restitution must be paid within 25 years.[4]
¶ 56 For the purposes of restitution for the arson in this case, she will remain under the court's jurisdiction until the obligation is completely satisfied. RCW 9.94A.753(4). The court focused on abiding by a nonexistent 25-year time limit, disregarding Ms. We's ability to make the minimum monthly payment.
¶ 57 The issue of Ms. We's resources was contested at trial. The State, in order to advance its theory that she was motivated to commit insurance fraud, presented evidence and argued at trial that Ms. We was quickly running out of money. Ms. We presented evidence and argued that she had enough money in a trust account in Belize to live on for two years. While there was some evidence of Ms. We's financial status in the court file, there is no indication the restitution judge (who was not the same judge that heard her trial) reviewed it.
¶ 58 Further, the trial court may rely only on information admitted, acknowledged, or proved in a trial or at the restitution hearing, and not on disputed information unless the factual dispute is resolved in an evidentiary hearing. RCW 9.94A.530(2); State v. Tindal, 50 Wash.App. 401, 748 P.2d 695 (1988). Although Ms. We was convicted, the jury did not have to determine her financial status to find her guilty.
¶ 59 Given that the trial court did not inquire into any of the statutory factors of RCW 9.94A.753(1) when setting the minimum monthly payment and, instead, set the payment amount on an erroneous basis, I would hold that the restitution order should be reversed and remanded for consideration of proper factors for the minimum monthly payment.
NOTES
[1] To determine whether a statement is impermissible opinion testimony or a permissible opinion pertaining to an ultimate issue, courts must consider "the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact." City of Seattle v. Heatley, 70 Wash.App. 573, 579, 854 P.2d 658 (1993).
[2] "`Appellate courts are and should be reluctant to conclude that questioning, to which no objection was made at trial, gives rise to "manifest constitutional error" reviewable for the first time on appeal. The failure to object deprives the trial court of an opportunity to prevent or cure the error. The decision not to object may be a sound one on tactical grounds by competent counsel, yet if raised successfully for the first time on appeal, may require a retrial with all the attendant unfortunate consequences. Even worse, and we explicitly are not referring to counsel in this case, it may permit defense counsel to deliberately let error be created in the record, reasoning that while the harm at trial may not be too serious, the error may be very useful on appeal.'" Warren, 134 Wash.App. at 56, 138 P.3d 1081 (quoting State v. Madison, 53 Wash.App. 754, 762-63, 770 P.2d 662 (1989)).
[3] "Arson is an offense which is most often proved by circumstantial evidence." State v. Young, 87 Wash.2d 129, 137, 550 P.2d 1 (1976). It is a crime of particularly secret preparation and commission, and the State can seldom produce witnesses to the actual setting of such a fire. Id. Nevertheless, a "well-connected train of circumstances may be as satisfactory as an array of direct evidence" in proving the crime of arson. Id.; State v. Plewak, 46 Wash.App. 757, 765, 732 P.2d 999 (1987); Am. States Ins. Co. v. Symes of Silverdale, Inc., 111 Wash.App. 477, 492, 45 P.3d 610 (2002), rev'd on other grounds, 150 Wash.2d 462, 78 P.3d 1266 (2003).
[4] The statute relevantly provides: "When restitution is ordered, the court shall determine the amount of restitution due. . . . The court shall then set a minimum monthly payment that the offender is required to make towards the restitution that is ordered. The court should take into consideration the total amount of the restitution owed, the offender's present, past, and future ability to pay, as well as any assets that the offender may have." RCW 9.94A.753(1).
[1] "`"Motive" is said to be the moving course, the impulse, the desire that induces criminal action on part of the accused; it is distinguished from "intent" which is the purpose or design with which the act is done, the purpose to make the means adopted effective.'" State v. Powell, 126 Wash.2d 244, 260, 893 P.2d 615 (1995) (quoting BLACK'S LAW DICTIONARY 1014 (6th ed.1990)). The jury was instructed on intent: "A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime." Clerk's Papers at 60.
[2] Justice Boyle's concurring opinion was issued on rehearing and joined by two other Justices, and therefore represents the majority view. Milburn v. State, 130 Idaho 649, 946 P.2d 71, 80 (Ct.App.1997).
[3] Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Washington has also adopted the Strickland test. State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987).
[4] In her restitution brief filed with the trial court, Ms. We cited RCW 9.94A.753(5) for the proposition that there is a 25-year time limit in which to pay restitution. RCW 9.94A.753(6) addresses a 25-year restitution time limit, but that subsection is limited to cases involving rape of a child in the first, second, or third degree, when the victim becomes pregnant so that the costs associated with the pregnancy and care of the child can be reimbursed. The trial court then repeated the urgency of the restitution payment: "I recognize that the amount payable would need to be structured to come within that 25 year window." RP (Sept. 22, 2005) at 25.