

FILED
COURT OF APPEALS
DIVISION II

2014 JAN 14 AM 9: 27

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

                          Respondent.

v.

JOEL ERNEST LEWIS and RICHARD
MICKELSON,

                          Appellants.

No. 43658-2-II
Consolidated with
No. 43748-1-II

UNPUBLISHED OPINION

MAXA, J. — Joel E. Lewis and Richard Mickelson each appeal their convictions for second degree assault while armed with a deadly weapon, arguing that the prosecutor made improper arguments during closing argument, counsel was ineffective for failing to object to the prosecutor's arguments, and the cumulative effect of the claimed errors denied them a fair trial. In his statement of additional grounds for review (SAG), Mickelson also argues that his counsel was ineffective for failing to offer x-rays of Mickelson's ribs as evidence of self-defense and that the bailiff violated Mickelson's due process rights by allegedly checking the crime scene and communicating her findings to the jury. We hold that (1) although the prosecutor's arguments were improper in three instances, the defendants waived any errors because they could have been cured with an appropriate instruction; (2) counsel was not ineffective because not objecting to the prosecutor's arguments may have been a legitimate trial strategy; (3) the cumulative effect of

the claimed errors did not warrant reversal; and (4) there is no evidence in the record that allows review of the errors claimed in Mickelson's SAG. Accordingly, we affirm.

## FACTS

Nathaniel Abbett, Misty Rasmussen, Jaime Hadley, Lewis and Mickelson were friends who had known each other from the time they were in school together. Abbett and Rasmussen had two children together as the result of a seven-year romantic relationship. They eventually separated and Rasmussen and the children moved in with Hadley, Rasmussen's stepsister. Lewis and Mickelson also lived in Hadley's home.

On the evening of December 22, 2011, Abbett argued over the telephone with Rasmussen. Around midnight, Hadley drove Lewis and Mickelson to Abbett's house. Abbett was outside and recognized Hadley's car as it passed by his house. He decided to follow it in his own vehicle. Eventually the vehicles stopped, and Lewis and Mickelson jumped out of Hadley's car and assaulted Abbett. Mickelson swung a baseball bat through Abbett's partially rolled down driver-side window and then crawled through the window and hit Abbett with his fists. Lewis broke the passenger-side window and struck Abbett with a baseball bat. Eventually, Lewis told Mickelson to stop and warned that the police were coming. Lewis and Mickelson returned to Hadley's car and left. As a result of the incident, Abbett suffered numerous lacerations to his face and there were significant amounts of glass in his left ear.

The State charged Lewis and Mickelson with second degree assault with a deadly weapon. In a joint trial Lewis and Mickelson both presented a self-defense theory, arguing that Abbett had attempted to hit Mickelson with his car after Lewis and Mickelson approached him. Mickelson testified that his attack on Abbett was an attempt to stop Abbett's car to ensure he was not hit again. Lewis testified that he broke the passenger window with his elbow in an attempt to

2

pull Abbett away from Mickelson and get Mickelson out of Abbett's car. Lewis and Mickelson both denied using a baseball bat to assault Abbett.

Trial testimony showed that Lewis and Mickelson had been drinking the day of the assault, neither had a steady job, and neither Mickelson nor Hadley initially told police the version of events that they presented at trial. In rebuttal argument, the prosecutor referred to Lewis and Mickelson and their witnesses as the "underbelly of society," and stated that they were the "type of people" who don't have jobs, drink all day, and don't like "cops." Report of Proceedings (RP) at 1477-78. The prosecutor also attempted to undermine defendants' self-defense theory by stating that the defendants' trial testimony was the "first time anyone heard this story," "they've never said it before," and "they never gave statements." RP at 1483-84. Finally, the prosecutor argued that the incident represented a second degree assault or self-defense, and implied that the jury either had to render a verdict based on whether it believed Abbett or it believed Lewis and Mickelson. Defense counsel for Lewis and Mickelson did not object to any of these statements.

The jury found Lewis and Mickelson guilty as charged. Lewis and Mickelson unsuccessfully moved for a new trial. Lewis and Mickelson appeal.

ANALYSIS

A.    PROSECUTORIAL MISCONDUCT

To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). In assessing whether a prosecutor's closing argument was improper, we recognize that the prosecutor has "wide latitude to argue reasonable inferences from the evidence,

3

including evidence respecting the credibility of witnesses." *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). The prosecutor is permitted to comment on the veracity of a witness as long as he or she does not express a personal opinion or argue facts not in the record. *State v. Smith*, 104 Wn.2d 497, 510-11, 707 P.2d 1306 (1985).

To establish prejudice, the defendant must show a substantial likelihood that the misconduct affected the jury verdict. *Thorgerson*, 172 Wn.2d at 442-43. Prejudice is not determined in isolation but "in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). When the defendant failed to object at trial, the defendant is deemed to have waived any error unless the prosecutor's misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). If an appropriate jury instruction could have cured the potential prejudice but the defendant did not request one, the defendant's prosecutorial misconduct claim fails. *Emery*, 174 Wn.2d at 761, 764.

### 1. Unfavorable Characterization of Defendants

Lewis and Mickelson argue that the prosecutor's characterization of defendants and defense witnesses as part of the "underbelly of society" and the type of people who don't have jobs, drink all day, and don't like cops was (1) based on facts not in the record and (2) constituted a personal opinion. We hold that the prosecutor's comments represented impermissible personal opinions, but that Lewis and Mickelson's failure to object waived their claims because the misconduct was not so flagrant that it could not have been cured by an instruction.

a. Improper Arguments

In closing argument, the prosecutor stated:

> . . . [T]hese people don't live under the same rules of society, the same way that most of us live. . . . This is kind of the underbelly of society. I don't mean that in a bad way. It's just a side of society that I'd suspect that most of you don't see very often. We see it all the time, but you don't. . . .
>
> These are people that don't have jobs. They work under the table. They live hand to mouth. They are engaged in drinking all day. They get upset with one another. They fight. That is the type of people that we're talking about.
>
> . . . .
>
> The other part of that could be . . . is that that part of society doesn't like cops. I don't like the cops no matter what. And that's this part of society.

RP at 1477-78.

Contrary to Lewis and Mickelson's argument, most of the prosecutor's challenged comments were based on facts in the record. The defendants' drinking habits in general and on the night of the assault are included in the record. Neither defendant was employed at the time of the assault in December of 2011. Testimony at trial indicated that the assault in question ended only when Lewis warned that the police were coming, which might support the reference to defendants' distrust of police. The references to the defendants' and witnesses' drinking habits, employment status, and attitudes toward police were reasonable inferences from these facts.

However, the prosecutor's characterization of defendants as belonging to the "underbelly of society" and a "side of society" that courts and prosecutors "see it all the time" is improper. RP at 1477-78. The record does not reflect the existence of any "underbelly of society" nor whether the prosecutor and court sees "[this side of society] all the time." RP at 1478. Therefore, the prosecutor's statements risk calling the jury's attention to matters it cannot consider. *See Warren*, 165 Wn.2d at 44 (holding that a prosecutor's reference to facts not in the record is improper because it allows the jury to speculate on facts not before it); *Smith*, 104

Wn.2d at 510-11 (holding that a prosecutor can question the veracity of witnesses, but cannot express a personal opinion to do so).

Further, it is misconduct for a prosecutor to state a personal belief as to the credibility of witnesses. *Warren*, 165 Wn.2d at 30. Instead of being based on the evidence, the prosecutor's statements about Lewis, Mickelson and their witnesses represented the prosecutor's personal opinions. His characterization that they were part of the "underbelly of society" conveyed his opinion that Lewis, Mickelson and their witnesses were not credible because of the "type of people" they were. RP at 1477-78.

Finally, describing defendants and witnesses as part of an "underbelly of society" also appears to be the type of "epithetical reference" courts have held improper. In *State v. Wilson*, the prosecutor referred to the defendant by a declaration, " 'to call [defendant] a beast would insult the entire animal kingdom.' " 16 Wn. App. 348, 357, 555 P.2d 1375 (1976). The court held that the remark was a derisively epithetical reference and expression of personal belief that was improper. *Wilson*, 16 Wn. App. at 357.

Nevertheless, the State argues that the statements were justified because they were in "direct response to Mickelson's closing argument." Br. of Resp't at 11. We disagree.Lewis's and Mickelson's counsel referred to Abbett as a liar several times, which the State argues prompted the prosecutor's attack on defense credibility. Just before the allegedly improper remarks were made by the prosecutor, Mickelson's defense counsel asked, "[W]hy does it matter who has a regular job at Jaime Hadley's house? Why does that matter?" RP at 1459. This latter statement may have permitted the prosecutor to argue inferences from the evidence regarding the fact the defense witnesses did not have jobs. "Remarks of the prosecutor, even if they are improper, are not grounds for reversal if they were invited or provoked by defense counsel and

6

are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). However, an attack on the credibility of the State's key witness does not permit the prosecutor to attack defense witnesses' credibility with personal characterizations regarding the "type of people" they are. RP at 1478.

b.    Waiver

Because Lewis and Mickelson did not object to the prosecutor's statements at trial, they must show that the misconduct was "so flagrant and ill intentioned" that no curative instruction could have eliminated any resulting prejudice. *Emery*, 174 Wn.2d at 760-761. We hold that the prosecutor's comments, although improper, did not rise to the level of reversible misconduct.

Lewis and Mickelson could have proposed an instruction directing the jury to disregard the prosecutor's personal opinions. The trial court already had instructed the jury that the lawyers' statements and arguments were not evidence and that the jury must render its verdict based solely upon the evidence presented at trial. This instruction helped to minimize any prejudice the unfounded inferences may have caused. *Emery*, 174 Wn.2d at 764 & n.14 (courts presume that juries follow the court's instructions); *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009). Mickelson argues that an instruction would not have cured the prejudice because of the rampant nature of the misconduct. But the prosecutor's comments were brief and isolated, and Lewis and Mickelson do not explain why a curative instruction could not have eliminated any prejudice resulting from them.

Because Lewis and Mickelson have not shown that the prosecutor's improper remarks created prejudice that an appropriate instruction could not have cured, we hold that they waived

their prosecutorial misconduct claims based on the "underbelly of society" and related comments.

    2.    Reference to Absence of Statements

Lewis and Mickelson argue that the prosecutor violated their right to remain silent by commenting on their failure to give statements. We hold that the prosecutor's comments represented an impermissible reference to silence, but also hold that Lewis and Mickelson were required to show prejudice because the prosecutor did not suggest that silence should be used as substantive evidence of guilt. We further hold that Lewis and Mickelson's failure to object waived their claims because the misconduct was not so flagrant that it could not have been cured by an instruction.

    a.    Improper Arguments

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Article I, section 9 of the Washington State Constitution states that "[n]o person shall be compelled in any criminal case to give evidence against himself." Both provisions guarantee a defendant the right to be free from self-incrimination, including the right to silence. *State v. Knapp*, 148 Wn. App. 414, 420, 199 P.3d 505 (2009). The State violates this right when it uses the defendant's constitutionally permitted silence as substantive evidence of guilt. *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1 (2008). More specifically, the State cannot elicit comments from witnesses or make closing arguments that infer guilt from the defendant's silence. *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996).

Nevertheless, under certain circumstances a defendant's silence can be used for impeachment purposes. *Easter*, 130 Wn.2d at 237. When the defendant testifies at trial he or

she can be impeached based on silence under certain circumstances. *Burke*, 163 Wn.2d at 217. "Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted." *Jenkins v. Anderson*, 447 U.S. 231, 239, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980). However, in *Burke*, our Supreme Court held that only the defendant's silence before arrest and before issuance of *Miranda*[1] warnings can be used for impeachment. *Burke*, 163 Wn.2d at 217. Further, our Supreme Court has cautioned that a defendant's testimony at trial does not automatically mean that commentary on his or her pre-arrest silence constitutes impeachment. *Burke*, 163 Wn.2d at 215-16.

If the State improperly refers to a defendant's silence, the type of reference determines the standard of review. *Burke*, 163 Wn.2d at 216. Our Supreme Court has distinguished between a "comment[ ]" on the constitutional right to remain silent and a "mere reference[ ]" to silence. *Burke*, 163 Wn.2d at 216. A comment involves use of silence either as substantive evidence of guilt or to suggest that the defendant's silence was an admission of guilt. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). Such a comment violates the United States and Washington constitutions. Conversely, a prosecutor's statement will not be considered a comment on the right to remain silent if " 'standing alone, [it] was so subtle and so brief that [it] did not naturally and necessarily emphasize defendant's testimonial silence.' " *Burke*, 163 Wn.2d at 216 (alterations in original) (internal quotation marks omitted) (quoting *State v. Crane*, 16 Wn.2d 315, 331, 804 P.2d 10 (1991)). A mere reference to silence is not reversible error absent a showing of prejudice. *Burke*, 163 Wn.2d at 216.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Lewis and Mickelson both testified at length at trial in support of their self-defense theory. During rebuttal, the prosecutor pointed out that Lewis and Mickelson (and Hadley) had never given statements to the police:

> Think about the violence of the scene. Think about the mindset of Mr. Abbett in that situation. He says he didn't hit anyone really. These guys don't have any injuries. Now, he gave two statements to the police and did a defense interview. So [Mickelson's defense counsel] wants to criticize, why did I spend so much time with these defendants dissecting what they said. *Because they've never said it before.* I don't have something to pin them down on, do I? I don't have a transcript to go, didn't you say at page 3, line 12, six months ago that this happened? Did I have that ability? I didn't. Why didn't I? *Because they never gave statements.*
> Hadley never gave a statement. Mickelson never gave a statement. These witnesses never gave a statement to the police, either. So he wants to criticize that. But it is my job to pin down their statements. And I have to do that in my job, *because they never spoke about these events. Because this was the first time, wasn't it? The first time anyone heard this story.*

RP at 1483-84 (emphasis added).

These arguments did touch on Lewis's and Mickelson's right to remain silent.[2] But the prosecutor was not arguing that the absence of statements should be used as substantive evidence of guilt or that guilt could be inferred from the silence. Instead, he was suggesting that Lewis's and Mickelson's testimony was not credible because it was invented for trial. The prosecutor compared the credibility of the victim, who told a consistent version of facts to the police and to defense counsel, with the credibility of Lewis and Mickelson, who presented their self-defense story for the first time on the stand. As a result, this argument was akin to using silence for impeachment purposes.

However, *Burke* indicates that even impeachment is improper for silence occurring after *Miranda* warnings are given, even if the defendant testifies at trial. 163 Wn.2d at 217. Here, the

---

[2] The prosecutor did not explicitly mention Lewis. But the prosecutor used the pronoun "they" referring to the defendants and stated that "they never gave statements." RP at 1483-84.

10

reference to the failure to give statements was not limited to the pre-arrest period. Accordingly, we hold that the prosecutor's argument was improper. On the other hand, because the prosecutor did not invite the jury to use the absence of statements as substantive evidence of guilt and because the argument was subtle and brief, we hold that the prosecutor's argument was a "mere reference" to silence rather than a comment.

b.    Waiver

Because the prosecutor constrained his argument to impeachment purposes and did not invite the jury to conclude that Lewis and Mickelson were guilty because they invoked their right to silence, his misconduct is not reversible error absent a showing of prejudice. *Burke*, 163 Wn.2d at 216. As discussed above, in the context of prosecutorial misconduct not objected to at trial, a defendant waives any argument unless the misconduct was so flagrant or ill intentioned that no curative instruction could have eliminated the prejudice. *Emery*, 174 Wn.2d at 760-761. We hold that the prosecutor's comments, although improper, did not rise to the level of reversible misconduct.

First, the prosecutor's remarks about the failure to give statements were not particularly flagrant. The prosecutor did not emphasize Lewis's and Mickelson's silence, and his reference to silence was indirect, subtle, and brief. Placed in the context of the entire argument, the statements were very close to being innocuous.

Second, Mickelson argues that a curative instruction would not have cured any prejudice because the misconduct was rampant, but as discussed above we do not find this misconduct to be flagrant. Other than this argument, Lewis and Mickelson have not attempted to explain why an appropriate instruction could not have cured any potential prejudice. A curative instruction would be particularly effective in this context, where "[m]ost jurors know that an accused has a

right to remain silent and, absent any statement to the contrary by the prosecutor, would probably derive no implication of guilt from a defendant's silence." *Lewis*, 130 Wn.2d at 706.

Because Lewis and Mickelson have not shown that the prosecutor's improper remarks created prejudice that an appropriate instruction could not have cured, we hold that they waived their prosecutorial misconduct claims based on the reference to their silence.

3.    Alleged "False Choice" Statement

Lewis[3] argues that the prosecutor improperly created a "[f]alse [c]hoice" by implying that the jury had to choose between believing Abbett or believing Lewis and Mickelson, and that the jury could find Lewis not guilty only if it did not believe Abbett. Br. of Appellant (Lewis) at 11-13. He also argues that the prosecutor misstated the jury's role and minimized the State's burden of proof by implying that the jury's role was to determine which witnesses were telling the "truth" and decide which version of the events is more likely true. Br. of Appellant (Lewis) at 13. We hold that the prosecutor's comments were improper, but that Lewis's failure to object waived his claim because the misconduct was not so flagrant that it could not have been cured by an instruction.

a.    Improper Arguments

It is improper for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken. *State v. Fleming*, 83 Wn. App. 209, 213, 921 P.3d 1076 (1996). A "false choice" argument misrepresents the role of the jury and the burden of proof by telling jurors they must decide who is telling the truth and who is lying in order to render a verdict. *State v. Wright*, 76 Wn. App. 811, 825-26, 888 P.2d 1214 (1995).[4] The

---

[3] Mickelson did not make this argument in his brief.

[4] *Wright* was superseded by statute on grounds not relevant to this case.

choice is false because the jury's task is not to choose between competing stories, but to determine whether the State met its burden of proof. The jury may find that the State has not met its burden of proof regardless of whether the jury believes the State's witnesses or disbelieves the defense witnesses, but the State's "false choice" improperly suggests otherwise.

Lewis relies on *State v. Miles*, 139 Wn. App. 879, 162 P.3d 1169 (2007) to support his argument that the prosecutor's argument was improper. In *Miles*, the prosecutor argued that the State and the defense had presented mutually exclusive versions of events and that, essentially, the jury would have to decide which version of events was more credible. 139 Wn. App. at 889-90. This court held that "to the extent the prosecutor's argument presented the jurors with a false choice, that they could find Miles not guilty only if they believed his evidence, it was misconduct." *Miles*, 139 Wn. App. at 890.

Here, the prosecutor presented a false choice argument similar to that in *Miles*. The prosecutor argued:

> Either you folks believe that this was an Assault in the Second Degree or it was self-defense. And you shouldn't consider any other charge. Because either it happened the way that they said it happened, or it happened the way that Nate Abbett told you. There's no in between.

RP at 1392. Later, the prosecutor argued, "If you do not believe Mr. Abbett and you believe Mr. Mickelson and Mr. Lewis, that they were acting in self-defense, then you are equally obligated to find them not guilty of anything. That's this case." RP at 1485-86.

We hold that the prosecutor's statements were improper. First, the prosecutor told the jury that they must choose between second degree assault and self-defense (which would be a not guilty verdict). But the prosecutor ignored the third choice – that Lewis and Mickelson did not act in self-defense but the State did not prove all of the elements of second degree assault. This type of argument is improper because it minimizes the State's burden of proof.

13

Second, the prosecutor improperly argued that the jury's only choice was to believe Abbett's testimony or to believe Lewis and Mickelson's testimony that they were acting in self-defense. The prosecutor essentially told the jury that its role was to determine who was telling the "truth" and base its verdict on that choice. However, the jury's role is to determine whether the State has met its burden of proof. *Wright*, 76 Wn. App. at 826. It is misleading and unfair to make it appear that an acquittal requires the jury to conclude that the State's witnesses are lying. *Wright*, 76 Wn. App. at 824-26. The jury is entitled to conclude that it did not necessarily believe Lewis and Mickelson but that the State did not prove its case beyond a reasonable doubt. *See Miles*, 139 Wn. App. at 890. And likewise, the jury is entitled to believe the State's witnesses but conclude that the State did not prove its case beyond a reasonable doubt. *Wright*, 76 Wn. App. at 824-25.

b. Waiver

Because Lewis did not object to the prosecutor's statements at trial, he must show that the misconduct was so flagrant and ill intentioned that no curative instruction could have eliminated the prejudice. *Emery*, 174 Wn.2d at 760-761. We hold that the prosecutor's comments, although improper, did not rise to the level of reversible misconduct.

First, the prosecutor's arguments were not particularly flagrant. The prosecutor did not expressly misstate the State's burden of proof and confirmed that the State had to meet its burden of proof for the jury to find Lewis and Mickelson guilty. The reference to the jury having to choose between believing Abbett and believing Lewis and Mickelson was brief and subtle and was not the focus of the prosecutor's argument.

Second, Lewis does not show why an instruction would not have cured any prejudice resulting from the prosecutor's arguments. Here, a curative instruction could have clarified the

14

No. 43658-2-II, consolidated with No. 43748-1-II

burden of proof and the jury's role. *See Emery*, 174 Wn.2d at 763-64; *Anderson*, 153 Wn. App at 432. Accordingly, we hold that Lewis waived his prosecutorial misconduct claim based on the false choice arguments.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Lewis and Mickelson argue that their counsel was ineffective for failing to object to the prosecutor's improper reference to their testimonial silence.[5] We disagree.

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show both (1) that defense counsel's representation was "deficient" and (2) that the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). The failure to show either element ends our inquiry. *Grier*, 171 Wn.2d at 33. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34.

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. A

---

[5] In the heading of his brief's section on ineffective assistance of counsel, Mickelson (and Lewis adopting by reference the arguments of Mickelson) also allege that counsel's failure to object to the prosecutor's closing remarks appealing to "bias" constituted ineffective assistance of counsel. However, we do not address the allegation because they did not assign error to it, did not develop the argument, and did not cite to the record or authority for support. *See* RAP 10.3(a)(6). Such passing treatment of an issue without reasoned argument does not merit judicial consideration. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012), *review denied*, 176 Wn.2d 1021 (2013). Neither Lewis nor Mickelson argued that the failure to object to the "false choice" argument constituted ineffective assistance.

15

claim that trial counsel provided ineffective assistance does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactic. *Grier*, 171 Wn.2d at 33. To rebut the strong presumption that counsel's performance was effective, "the defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 42 (emphasis in original) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

"The decision of when or whether to object is a classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). For example, counsel may decide not to object to avoid the risk of emphasizing damaging evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). Therefore, we presume that "the failure to object was the product of legitimate trial strategy or tactics, and the onus is on the defendant to rebut this presumption." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). In order to show that defense counsel was ineffective for failing to make a particular objection, the defendant must show that not objecting "fell below prevailing professional norms." *Davis*, 152 Wn.2d at 714.

Lewis and Mickelson argue that their counsel was ineffective for failing to object to the prosecutor's improper closing argument that referenced their testimonial silence. We have held that the prosecutor's reference to the absence of statements from Lewis and Mickelson arguments was improper. However, we hold that counsel's failure to object to the absence of statements was not deficient because it may have involved legitimate trial strategy.

Counsel may not have wanted to object to the prosecutor's reference to the absence of statements in order to avoid emphasizing the fact that Lewis and Mickelson did not tell the police that they acted in self-defense. An objection may have called the jury's attention to their silence

and triggered the type of negative inference of guilt that the prosecutor did not argue. Because the prosecutor's reference to silence was subtle and so brief, counsel may have hoped that Lewis and Mickelson's testimonial silence would escape the jury's attention. We hold that counsel performance was not deficient in failing to object. Accordingly, Lewis's and Mickelson's ineffective assistance of counsel claims fail.

## C.    CUMULATIVE ERROR

Lewis and Mickelson next argue that they are entitled to relief under the cumulative error doctrine. They argue that even if each of the alleged are does not support reversal, the accumulation of the errors denied their right to a fair trial. We disagree.

The cumulative error doctrine applies where "there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). "The defendant bears the burden of proving an accumulation of error of sufficient magnitude that retrial is necessary." *State v. Yarbrough*, 151 Wn. App. 66, 98, 210 P.3d 1029 (2009). "Where no prejudicial error is shown to have occurred, cumulative error cannot be said to have deprived the defendant of a fair trial." *State v. Price*, 126 Wn. App. 617, 655, 109 P.3d 27 (2005).

Here, we have found that the prosecutor's arguments were improper in three instances, but that Lewis and Mickelson waived their prosecutorial misconduct claims. Moreover, they have not shown that the improper arguments prejudiced them. And even taken together, the improper arguments are not of sufficient magnitude to deny Lewis and Mickelson a fair trial. Therefore, we hold that Lewis and Mickelson failed to show cumulative error warranting reversal of their convictions.

17

D.   MICKELSON'S SAG

In his SAG, Mickelson alleges that there were x-rays of his ribs taken at the Thurston County jail, "key evidence" in his opinion, which should have been produced at trial but was not. He appears to suggest that his counsel's failure to offer these x-rays as evidence in support his self-defense theory constitutes ineffective assistance of counsel. We reject this argument.

As noted above, to prevail on an ineffective assistance of counsel claim, the defendant must show that defense counsel's performance was objectively deficient and that the performance prejudiced him. *Grier*, 171 Wn.2d at 32-33. Mickelson asserts that the x-rays were taken for an injury that occurred when Abbett hit him with his car, but there is no evidence in the record that the x-rays exist, show any such injury, or would have favored Mickelson's self-defense theory. Because there is no evidence in the record upon which to base review of Mickelson's allegation, we cannot consider it on direct appeal. *State v. We*, 138 Wn. App. 716, 729, 158 P.3d 1238 (2007) (claims based on evidence outside the record must be pursued through a personal restraint petition); *see also State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Mickelson also alleges that the trial court's bailiff violated due process by checking the crime scene for glass at the request of the jury during their deliberations. We cannot consider matters outside the record on direct appeal. *McFarland*, 127 Wn.2d at 335; *We*, 138 Wn. App. at 729. The record does not reflect any indication that the bailiff checked on the crime scene and then communicated her findings to the jury. Mickelson's allegation in this part of the SAG appears to have no basis in the record, so we cannot review it.

No. 43658-2-II, consolidated with No. 43748-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, A.C.J.

BJORGEN, J.

19