49 P.3d 960 (2002)
112 Wash.App. 525
STATE of Washington, Respondent,
v.
Miguel Bobadilla OLMEDO, Appellant.
State of Washington, Respondent,
v.
Ronald P. Johnson, Appellant.
Nos. 19989-4-III, 20064-7-III.
Court of Appeals of Washington, Division 3, Panel Five.
July 18, 2002.
*961 William D. Edelblute, Spokane, for Appellant in No. 19989-4-III.
Gail L. Siemers, Walla Walla, for Appellant in No. 20064-7-III.
Joseph Golden, Deputy Pros. Atty., Walla Walla, for Respondent in No. 20064-7-III.
Joseph Golden, Deputy Pros. Atty., Walla Walla, for Respondent in No. 19989-4-III.

OPINION PUBLISHED IN PART
BROWN, C.J.
A Walla Walla County Jury found Miguel Olmedo and Ronald Johnson guilty of unlawful storage of anhydrous ammonia and three other offenses not before us. We sustain their challenge to certain admitted testimony regarding the legal standards related to the storage charge, and also expressing a belief in the appellants' guilt. Additionally, we agree the instructions for the unlawful storage charge were deficient. Accordingly, we reverse the unlawful storage charge convictions. In the unpublished portion of this opinion, we reject their challenge to the sentencing calculations and their pro se contentions.

*962 FACTS
On the evening of November 3, 2000, deputy sheriffs responded to a silent alarm connected to a video camera at Western Farm Services in Clyde, Washington. Western Farm Services sells farm supplies, including anhydrous ammonia used for fertilizer. The ammonia is stored in large tanks within a fenced area. The ammonia can be illegally used to manufacture methamphetamine.
After entering the fenced area, deputies saw two small propane tanks near a large anhydrous ammonia tank. The top to one of the propane tanks had been replaced with a funnel. A hose ran from the propane tank toward the anhydrous ammonia tank. Also found nearby were tools, and a wooden ladder against the inside of the fence. These items did not belong to Farm Services. Deputies discovered Mr. Johnson and Mr. Olmedo hiding in the vicinity and arrested them.
Deputies discovered a truck registered to Mr. Olmedo's girlfriend nearby. In the bed of the truck, in a cardboard box, deputies found items commonly used in the manufacturing of methamphetamine, including glassware and chemicals. Mr. Olmedo's fingerprints were found on a glass flask in the box found in the bed of the truck. Mr. Johnson admitted, but later denied, they had planned to take anhydrous ammonia.
Mr. Olmedo and Mr. Johnson were charged with second degree burglary, theft of anhydrous ammonia, unlawful storage of anhydrous ammonia, and possession of certain items with intent to manufacture methamphetamine. At trial, Richard Beckman, a crop advisor for Western Farm Services, testified for the State. Mr. Beckman works with the company's anhydrous ammonia and is familiar with its characteristics. Mr. Beckman testified that Farm Services has a 21,000-gallon anhydrous ammonia tank on the premises.
After relating evidence supporting the burglary, and without any foundation as to the depth or basis of his knowledge, Mr. Beckman testified he was familiar with the regulations for storing and handling anhydrous ammonia. He indicated it was illegal to use brass, bronze or copper fittings as found on the propane tanks used to store the stolen anhydrous ammonia. Mr. Beckman also testified that Farm Services' large anhydrous ammonia tank required labeling with hazardous material plaques.
Over defense counsel's objection, Mr. Beckman testified he did not believe the propane tanks were approved by the United States Department of Transportation (DOT) for the storage of anhydrous ammonia. Mr. Beckman indicated that anhydrous tanks must have a pressure relief valve, and a fastflow valve or emergency shut-off valve, none of which were present on the propane tanks. Further, tanks used to transport the ammonia must be hydrostatically tested with a stencil showing inspection. The gist of his testimony indicated the propane tanks did not meet legal requirements as he understood them.
Over defendants' objection, the court's to convict instruction on the charge of unlawful storage of anhydrous ammonia defined the elements as knowing possession of anhydrous ammonia in a container (a) not approved by the United States department of transportation to hold anhydrous ammonia, or (b) not constructed to meet state and federal industrial health and safety standards for holding anhydrous ammonia. Clerk's Papers (CP) at 33-34. The court refused Mr. Olmedo's request to further define a DOT approved tank or identify the applicable state and federal industrial health and safety standards.
The defendants were convicted of all four counts. At sentencing, the court rejected their argument that the four crimes encompassed the same criminal conduct and should only count as one point toward the offender score. Instead, the court calculated the defendants' score by adding the burglary conviction as a separate crime, sentenced the defendants within the standard range, and ran the sentences concurrently. The defendants include pro se claims for suppression of the evidence that are addressed in the unpublished portion of this opinion.

ANALYSIS

A. Improper Testimony
The issue is whether the trial court erred by abusing its discretion when allowing Mr. *963 Beckman to express his opinion as to the appellants' breach of legal standards for the propane tanks used to store the stolen anhydrous ammonia.
Trial courts are afforded broad discretion in deciding whether to admit evidence, including testimony. State v. Demery, 144 Wash.2d 753, 758, 30 P.3d 1278 (2001); City of Seattle v. Heatley, 70 Wash. App. 573, 577, 854 P.2d 658 (1993); State v. Ortiz, 119 Wash.2d 294, 308, 831 P.2d 1060 (1992). A trial court's decision to admit or deny evidence will be upheld unless the appellant can show abuse of discretion. Demery, 144 Wash.2d at 758, 30 P.3d 1278. In this context, [a] trial court abuses its discretion only if no reasonable person would adopt the view espoused by the trial court. Id. If reasonable people can disagree about the propriety of the trial court's decision, no abuse of discretion will exist. Id.
Lay and expert witnesses may not testify as to the guilt of the defendants, either directly or by inference. Heatley, 70 Wash.App. at 577, 854 P.2d 658. Such an improper opinion undermines a jury's independent determination of the facts, and may invade the defendant's constitutional right to a trial by jury. Demery, 144 Wash.2d at 759, 30 P.3d 1278; State v. Black, 109 Wash.2d 336, 348, 745 P.2d 12 (1987).[H]owever, an opinion is not improper merely because it involves ultimate factual issues. Heatley, 70 Wash.App. at 578, 854 P.2d 658 (citing ER 704). ER 704 provides that [t]estimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
Whether testimony constitutes an impermissible opinion on the defendant's guilt is determined from the circumstances of each case. State v. Cruz, 77 Wash.App. 811, 814-815, 894 P.2d 573 (1995). Factors to consider include the type of witness, the nature of the charges, the type of defense, and the other evidence. Heatley, 70 Wash.App. at 579, 854 P.2d 658. Evidence is not improper when the testimony is not a direct comment on the defendant's guilt, is helpful to the jury, and based on inferences from the evidence. Id. at 577, 854 P.2d 658.
For example, asking a witness if anyone threatened the defendant, if a person had anything in his hands, or made any movement toward the defendant are permissible questions based upon observations. State v. Read, 100 Wash.App. 776, 786-87, 998 P.2d 897 (2000), review granted, 145 Wash.2d 1006, 37 P.3d 292 (2001). But asking a witness if the defendant had any reason to defend himself, any reason to pull out a weapon at that time, or any reason to shoot the victim, crosses the line and improperly asks for opinion testimony on the validity of the defendant's self-defense theory, and thus his guilt. Id. at 787, 998 P.2d 897.
A police officer may opine as to the defendant's level of intoxication in a DUI case, when based upon personal observation and experience. State v. Lewellyn, 78 Wash.App. 788, 895 P.2d 418 (1995); Heatley, 70 Wash. App. at 579, 854 P.2d 658. But an officer may not offer his opinion as a lay witness on the defendant's state of mind, when such an opinion is based upon speculation. State v. Farr-Lenzini, 93 Wash.App. 453, 460-61, 970 P.2d 313 (1999).
In this case, Mr. Beckman was asked to give his opinion, as an expert, on whether the propane tank was approved by the DOT. Whether the tank was approved was a core element of the charges against the appellants. While Mr. Beckman was permitted to describe what he saw, no label and brass fittings, and although Mr. Beckman's opinion did not address whether the appellants possessed the tank, his answers, indicating that the tanks were unapproved by the DOT and did not meet DOT standards, amount to improper opinions on the appellants' guilt.
We view Mr. Beckman's testimony as giving improper legal conclusions. Under ER 704, a witness may testify as to matters of law, but may not give legal conclusions. See Hyatt v. Sellen Constr. Co., Inc., 40 Wash.App. 893, 899, 700 P.2d 1164 (1985); Everett v. Diamond, 30 Wash.App. 787, 791-92, 638 P.2d 605 (1981). Improper legal conclusions include testimony that a particular law applies to the case, or testimony that the *964 defendant's conduct violated a particular law. Hyatt, 40 Wash.App. at 899, 700 P.2d 1164. Furthermore, [e]xperts may not offer opinions of law in the guise of expert testimony. Stenger v. State, 104 Wash.App. 393, 407, 16 P.3d 655, review denied, 144 Wash.2d 1006, 29 P.3d 719 (2001).
Here, the critical question was whether the propane tanks were approved by the DOT. This called for an improper legal conclusion because the answer requires the application of law defining a DOT approved tank to the specific facts. See Hyatt, 40 Wash.App. 893, 700 P.2d 1164 (in an action for job-site injury, expert could state his opinion on the industry's standard of care but could not testify as to the meaning of certain statutes, whether they applied to the case, or whether the contractor violated the statutes); Everett, 30 Wash.App. 787, 638 P.2d 605 (expert could not testify that working conditions were in violation of DOL's safe place standards); Brawn v. Fuji Heavy Indus., Ltd., 817 F.Supp. 184 (D.Me.1993) (expert's opinion that federal motor vehicle safety standard was inapplicable to the instant case was inadmissible; it was the judge's role to instruct the jury on the law and, thus, on the significance of any federal standards).
As pointed out, Mr. Beckman may testify about what he saw, such as relevant characteristics of the tank. The court could then have instructed the jury on the law and allowed the jury to reach its own conclusions as to whether the tanks were approved by the DOT.
Next, we must determine if the error was harmless. Permitting a witness to testify as to the defendant's guilt raises a constitutional issue because it invades the province of the jury and the defendant's constitutional right to a trial by jury. See Demery, 144 Wash.2d at 759, 30 P.3d 1278. An error of constitutional magnitude is presumed prejudicial, and the State bears the burden of proving the error was harmless beyond a reasonable doubt. State v. Spotted Elk, 109 Wash.App. 253, 261, 34 P.3d 906 (2001). A constitutional error is harmless only when the untainted evidence provides an overwhelming conclusion of guilt. Id.
Here, as to the crime of unlawful storage of anhydrous ammonia, it cannot be said the error was harmless. Mr. Beckman's testimony was the sole evidence relating to the crime. Furthermore, when coupled with the trial court's failure to define a DOT approved tank in the instructions, the jury was left to speculate on the definition of an approved tank, or accept Mr. Beckman's conclusion.

B. Incomplete Instructions
The issue is whether the trial court erred by abusing its discretion when refusing to instruct the jury on the legal definitions regarding a DOT approved container and the applicable state and federal industrial health and safety standards.
Instructions are sufficient if, when read as whole, they are readily understood, not misleading to the ordinary mind, and properly inform the jury of the applicable law. State v. Rehak, 67 Wash.App. 157, 165, 834 P.2d 651 (1992). However, when requested, a trial court in a criminal case must define technical words and expressions used in jury instructions. State v. Brown, 132 Wash.2d 529, 611-612, 940 P.2d 546 (1997). This is known as the technical term rule. State v. Scott, 110 Wash.2d 682 at 689-90, 757 P.2d 492 (1988). A term is technical if its legal definition differs from the common understanding of the word. Brown, 132 Wash.2d at 611, 940 P.2d 546. Whether a term is technical is left to the trial court's discretion. State v. Amezola, 49 Wash.App. 78, 88, 741 P.2d 1024 (1987) (citing State v. Guloy, 104 Wash.2d 412, 417, 705 P.2d 1182 (1985)).
The appellants argue the instructions are deficient because they fail to identify the state or federal standards, and they fail to define what is an approved container. The trial court rejected this argument, stating:
As to the container language issue in [jury instruction] Number 17, I have already addressed that earlier. There was testimony by Mr. Beckman, if the Court recalls correctly, he was familiar with the approved tanks, that they were not approved tanks as he understood it. And I *965 think there's no further burden on the State to set out what the federal or state industrial health and safety regulations are, nor the Department of Transportation requirements.
Report of Proceedings at 287.
However, Mr. Beckman's testimony was merely evidentiary in nature, not conclusive; the jury could disregard or discredit it. By relying upon Mr. Beckman's testimony regarding the legality of the propane tanks as a substitute for the proper legal definitions, the trial court both relieved the State of proving exactly what were the DOT requirements and implicitly accepted Mr. Beckman's testimony as fact. See State v. Becker, 132 Wash.2d 54, 64, 935 P.2d 1321 (1997) (error to charge the jury on fact or fail to declare the law). Because the jury was never instructed as to the legal definition of an approved container, they were prevented from questioning Mr. Beckman's testimony.
Furthermore, the to convict instruction failed to clearly instruct the jury on the law. Jurors should not have to speculate about [the law], nor should counsel have to engage in legalistic analysis or argument in order to persuade the jury as to what the instructions mean or what the law is. State v. Byrd, 72 Wash.App. 774, 780, 868 P.2d 158 (1994), aff'd, 125 Wash.2d 707, 887 P.2d 396 (1995) (citing State v. Davis, 27 Wash.App. 498, 506, 618 P.2d 1034 (1980)).
The State correctly argues that they do not have to prove what the DOT standards are, only that the container was not approved by the DOT. But the legal definition of a DOT approved container is not common knowledge. Even though Mr. Beckman testified that he did not believe the propane tank was approved, the jury was entitled to disbelieve Mr. Beckman. However, the jury must first know how the law defines an approved container. Because the trial court failed to instruct the jury on the legal definition of an approved tank, the defendants were effectively precluded from arguing that Mr. Beckman's conclusion was wrong. Thus, Mr. Beckman's improper testimony noted above compounded the problem discussed here.
In addition, it is unclear whether DOT regulations would even apply in this situation. The regulations cited by the parties only apply to containers on vessels. See 46 C.F.R. § 98.01-1(a) (2002). Additional regulations apply to containers used in commercial transportation. See 49 C.F.R. § 171.1 and 49 C.F.R. § 178.1 (2002). Most of these regulations identify manufacturing specifications for storage containers. The regulations place the burden on the manufacturer to certify, by labeling, that a container is built to DOT specifications. 49 C.F.R. § 178.2(a)(2) (2002). But a manufacturer's certification is not the same as a DOT approved container. Instead, it appears that DOT approval is the exception, not the rule. See 49 C.F.R. § 171.8; 49 C.F.R. § 171.11(d)(15) and (d)(17); 49 C.F.R. § 171.20 (2002).
If the DOT's regulations do not apply, then the State must prove the alternative, that the container did not meet state and federal industrial health and safety standards Although Mr. Beckman gave some examples of the DOT requirements, there was no testimony and no instruction on the industrial health and safety standards. If the containers were not within the DOT's regulations, then the State was required to prove the tanks did not meet the industrial health and safety standards. These standards are not common knowledge, and the court should have had them in the instructions. The trial court abused its discretion in refusing to define an approved container, and refusing to identify the applicable state and federal standards.
In summary of the published portion of this opinion, we reverse the unlawful storage charge convictions of both appellants. The appellants do not challenge the sufficiency of the evidence supporting the charge. Therefore, we remand to the trial court for further proceedings consistent with this opinion as may be required.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public *966 record pursuant to RCW 2.06.040, it is so ordered.
WE CONCUR: SCHULTHEIS and KURTZ, JJ.