FILED

JAN 22, 2015

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31897-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BILLIE J. MILLIKEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Billie Jo Milliken appeals her conviction for theft in the first degree. She contends the trial court erred in admitting a report prepared by a forensic accountant as the report contained an improper opinion of her guilt. We affirm.

FACTS

KAYU-TV employed Ms. Milliken as their sole accounts payable clerk from 1999 through 2010. Her job involved entering invoices[1] into the accounting system, coding them to the relevant accounts, and paying the invoice after a department head authorized payment. This process created KAYU-TV financial statements. KAYU-TV authorized Ms. Milliken to purchase their supplies from Office Depot. When the Office Depot invoices arrived, Ms. Milliken was to place them in the Office Depot file and

---

[1] Throughout the record, it appears "invoice" and "voucher" are used interchangeably. (See, e.g., Report of Proceedings (RP) at 162).

attach the corresponding check stubs to the invoice to provide support for payment. KAYU-TV's policy was to pay the balance due to its vendors every month. KAYU-TV required approval to carry a balance.

When Ms. Milliken was placed on leave in December 2010, her supervisor, Lowell Pederson, business manager and assistant controller for the television group, became aware of an issue with the Office Depot account. The December Office Depot statement showed a balance of $4,000-$5,000, including finance charges owed. Mr. Pederson noticed unaccounted-for money owing to Office Depot. Examination of the Office Depot statement showed a number of unauthorized gift cards[2] had been purchased. Purchase of gift cards had to be authorized by KAYU-TV. Even so, Melanie Funaro, an Office Depot manager, recalled Ms. Milliken buying gift cards on multiple occasions. Ms. Milliken maintained she had been told by different managers to purchase the gift cards for KAYU-TV use and the gift cards should have been included in KAYU-TV's records. She explained she was not the sole person inputting the data into the accounting system.

Continuing his investigation, Mr. Pederson went online to retrieve Office Depot statements dating from late 2008. While these statements should have been in KAYU-TV's records, they were not. KAYU-TV's records indicated Ms. Milliken submitted invoices for purchase of routine office supplies, not gift cards. Mr. Pederson agreed to have a fraud examination conducted.

---

[2] The term "prepaid debit card" is used interchangeably with "gift card" throughout the record. (*See, e.g.*, RP at 53). "Gift card" is used here.

2

Shelly Heston, a certified public accountant and fraud examiner, worked on the KAYU-TV examination. Focusing on a three-year period, from 2007 through 2010, her investigation revealed there were 30 vouchers in KAYU-TV's records that could not be traced to Office Depot statements and 91 purchases on Office Depot statements that were never entered in KAYU-TV's records. Of those 91 purchases, Ms. Heston was able to obtain copies of the invoices for 69 purchases; the invoices showed Ms. Milliken's signature. Ms. Heston concluded the amount of actual unaccounted-for purchases was $25,570. With the inclusion of finance charges, KAYU-TV lost a total of $27,660. Ms. Heston prepared a report with her findings.

The State charged Ms. Milliken with first degree theft other than a firearm. At trial, after Ms. Heston's testimony, the State moved to admit her report. Defense counsel objected, arguing the report violated ER 701 and ER 702 and "invade[d] the province of the jury." Report of Proceedings (RP) at 143. In a later hearing outside the presence of the jury, defense counsel argued the report "seem[ed] to be kind of an expert opinion that a theft occurred" and was an "improper comment that Mr. Pederson is credible and these claims were credible." RP at 163. The court admitted the report, provided "any opinion that comes close to guilt [ ] be excised by the redaction process," as the court believed the report would be helpful because the structure of Ms. Heston's testimony was not cohesive and the testimony was a bit ambiguous. RP at 161, 162.

The jury found her guilty as charged. Ms. Milliken moved unsuccessfully for a new trial; the trial court again rejected her expert witness concerns. She appealed.

3

ANALYSIS

The issue is whether the trial court erred in admitting the report prepared by Ms. Heston. Ms. Milliken contends the report, even in its redacted form, is an expert opinion on Ms. Milliken's guilt and its admission was not harmless error.

On appeal, a party may assign evidentiary error only on a specific ground made at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). Requiring such objections at trial gives the trial court the chance to prevent or cure the error. *State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976).

Contrary to the State's contention, Ms. Milliken did object at trial to the report on the grounds asserted in her appeal. In response to Ms. Milliken's objections, the trial court ordered "any opinion that comes close to guilt," along with Ms. Milliken's name, be redacted. RP at 143, 161, 163. Thus, the issue was preserved for appeal.

Trial courts have broad discretion in determining the admissibility of evidence, including testimony. *State v. Olmedo*, 112 Wn. App. 525, 530, 49 P.3d 960 (2002). Unless the appellant can show a trial court abused its discretion, a trial court's decision to admit or deny evidence will be upheld. *Id.* "In this context, [a] trial court abuses its discretion only if no reasonable person would adopt the view espoused by the trial court." *Id.* (alteration in original). No abuse of discretion exists where "reasonable people can disagree about the propriety of the trial court's decision." *Id.*

Experts may not testify, either directly or by inference, about a defendant's guilt. *Id.* at 530. "Such an improper opinion undermines a jury's independent determination of

4

the facts, and may invade the defendant's constitutional right to a trial by jury." *Id.* at 530-31; *see also State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987) (because such testimony "invad[es] the exclusive province of the finder of fact," it has been characterized as unfairly prejudicial). Just because an opinion involves ultimate factual issues does not make it improper. *City of Seattle v. Heatley*, 70 Wn. App. 573, 578, 854 P.2d 658 (1993); *see* ER 704 ("Testimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). While "opinion testimony may not be excluded under ER 704 on the basis that it encompasses ultimate issues of fact," it must be otherwise admissible under ER 403, ER 701, and ER 702. *Heatley*, 70 Wn. App. at 578-79.

The circumstances of each case determine if an expert's testimony is an impermissible opinion on the guilt of a defendant. *Olmedo*, 112 Wn. App. at 531. Factors include "the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact." *Heatley*, 70 Wn. App. at 579. That an expert's opinion "encompassing ultimate factual issues *supports* the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt" as the implication the defendant is guilty is what makes the opinion relevant and material. *Id.* at 579 (emphasis in original) (noting opinions based on inferences from the physical evidence and the expert's experience are admissible).

5

In addition to not opining on the defendant's guilt, an expert witness may not give legal conclusions. *Olmedo*, 112 Wn. App. at 532 (citing ER 704). This includes testimony that a defendant's conduct violated a particular law. *Id.*; *see also Heatley*, 70 Wn. App. at 581 (an expert opinion is more troubling if "framed in conclusory terms that merely parroted the relevant legal standard").

Ms. Milliken contends Ms. Heston's report expressed an opinion about Ms. Milliken's guilt when it concluded she was the individual who committed theft of KAYU-TV funds. While Ms. Heston's report did cast doubt on Ms. Milliken's version of events, specifically that she was authorized to purchase the gift cards, it is not an opinion on her guilt. Ms. Heston's report did not tell the jury what result to reach by saying Ms. Milliken was guilty of first degree theft. The redacted report simply said, based on her investigation, someone was involved in a scheme which "caused a direct economic loss to KAYU-TV in the amount of $27,660" by using "[f]alse purchase vouchers and unrecorded credits issued for product returns . . . to conceal multiple unauthorized purchases of gift cards [REDACTED]." Ex. 6 at 7.

While Ms. Heston's report supports the jury's guilty finding, that alone does not make the report an improper opinion on guilt. Ms. Heston's report relied on the physical evidence and her experience to conclude KAYU-TV's Office Depot account was being used to misappropriate funds. *See State v. Jones*, 59 Wn. App. 744, 749, 801 P.2d 263 (1990) (affirming expert opinion where it was not based on an opinion of a witness' credibility but instead based on inferences from physical evidence). Even after looking

6

at the report, the jury still had to decide whether to believe the information contained in the report and if it was Ms. Milliken who took the money from KAYU-TV. In light of all the evidence, the jury decided Ms. Milliken's version of events was not credible.

Ultimately, Ms. Heston was permitted to describe how she conducted the fraud investigation of KAYU-TV and what the results of her investigation were. Ms. Heston testified how she determined certain purchase vouchers were false. She testified how she found out a large number of the receipts were signed by Ms. Milliken. She testified as to the amount of loss. While objections were made to the admission of exhibits Ms. Heston used in her examination, no objection was made to her actual testimony. The report prepared by Ms. Heston was merely her testimony in written form. Properly exercising its discretion, the trial court reasoned the report would be helpful to the jury as a cohesive document meant to clarify Ms. Heston's testimony.

Even if the trial court constitutionally erred in admitting the report, the error was harmless. "An error of constitutional magnitude is presumed prejudicial, and the State bears the burden of proving the error was harmless beyond a reasonable doubt." *Olmedo*, 112 Wn. App. at 533. But harmless constitutional error occurs "only when the untainted evidence provides an overwhelming conclusion of guilt." *Id.*

Without the report, the untainted evidence showed (1) it was Ms. Milliken's job to input the invoices, including those from Office Depot, into KAYU-TV's system, (2) the problem with the Office Depot account was not discovered until Ms. Milliken's job was absorbed into Mr. Pederson's office, (3) KAYU-TV's preliminary internal investigation

7

showed the numbers on the Office Depot statement were not adding up, (4) Ms. Heston's fraud examination showed there was misappropriation of funds from KAYU-TV using the Office Depot account, (5) the problematic transactions involved the purchase of gift cards, (6) Ms. Milliken was authorized to purchase items at Office Depot, (7) it was not the policy of KAYU-TV to purchase gift cards without authorization, (8) no authorizations were seen in the Office Depot file, (9) an Office Depot manager saw Ms. Milliken sign receipts for gift cards many times, and (10) Ms. Milliken admitted many of the signatures on the receipts were hers. Given the above untainted evidence, we decide it provides an overwhelming conclusion of Ms. Milliken's guilt.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Brown, A.C.J.

WE CONCUR:

_____           _____
Korsmo, J.                          Fearing, J.

8