# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 56047-0-II |
| Respondent, | |
| v. | |
| SANDY MARION CROCKER, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—Sandy Crocker sold methamphetamine to a confidential informant on two occasions. At trial, a law enforcement officer stated that a transaction occurred at one of the meetings, even though he did not see the transaction. Defense counsel objected and the trial court sustained the objection. The officer admitted on cross-examination that he did not see the transaction. A jury convicted Crocker of two counts of delivery of a controlled substance.

Crocker appeals. She argues her right to a fair trial was violated by the officer's statement and we should reverse one of her convictions. The State concedes that the officer's statement was improper but argues that any error was harmless. Crocker also filed a statement of additional grounds for review (SAG).

We affirm Crocker's convictions.

### FACTS

After a confidential informant performed three separate controlled buys of methamphetamine from Crocker, police arrested Crocker and found more methamphetamine in her purse at the time of her arrest. The State charged Crocker with three counts of delivery of a controlled substance and one count of possession with intent to deliver a controlled substance.

At trial, a former detective testified about the procedure for the controlled buys. He explained that officers search confidential informants and their vehicles both before and after a controlled buy and that they try to maintain constant surveillance during the operation. Informants sometimes wear wires to record their interactions with the sellers. The informant in this case was paid $100 per successful purchase of methamphetamine.

The detective testified that on the second in the series of controlled buys from Crocker, the informant wore a wire and was searched beforehand, and law enforcement found no illegal substances. The informant then went to the apartment complex where Crocker lived, seeking to purchase methamphetamine:

> [PROSECUTOR:] And did the transaction take place immediately or shortly thereafter when she got to [the apartment complex]?
>
> [DETECTIVE:] Yes. The -- Ms. Crocker came out of the apartment, . . . met the confidential informant in her vehicle to [go to] where the transaction took place.
>
> [DEFENSE COUNSEL:] Objection, this is stating his opinion . . . which is ultimately for the trier of fact.
>
> THE COURT: So, [I] think you can describe what he has personal knowledge of, because that's how I'll rule.

1Verbatim Rep. of Proc. (VRP) at 254. When asked if Crocker and the informant went anywhere from the apartment complex, the detective testified that the informant drove Crocker to a parking lot near a store, followed by detectives. They later returned to the apartment complex:

> [PROSECUTOR:] And what happened once they were at [the apartment complex]?
>
> [DETECTIVE:] Once they got to [the apartment complex], Ms. Crocker got out of the vehicle, went into her apartment and a few moments later she then arrived back to the confidential informant's vehicle.
>
> [PROSECUTOR:] And after that, what happened next?

[DETECTIVE:] What happened then was an exchange of controlled substances took place for money.

[DEFENSE COUNSEL:] Objection.

THE COURT: Again, he can testify to what he has personal knowledge of.

[DETECTIVE:] So, after the –

[DEFENSE COUNSEL:] The objection is sustained because he doesn't have personal knowledge? I mean –

THE COURT: Well, --

[PROSECUTOR:] Well, I think we can move past this point and simply go onto the narrative.

THE COURT: Okay. Well, let me say this. I'm not quite sure what your objection was, but I think he needs to limit his testimony to things he has actual personal knowledge of not speculating as to what happened.

He wasn't there. Isn't that what you're objecting to?

[DEFENSE COUNSEL:] Correct. So, the State –

THE COURT: So, I guess I sustain in that sense.

1 VRP at 255-56. The trial court did not strike the detective's statement or instruct the jury further at that time. On cross-examination, the detective admitted that he had not personally observed a transaction.

The detective testified that after leaving the apartment complex, the informant returned to the designated search location, "got out of the vehicle, [and] handed [the detective] a small bag of what looked like methamphetamine." 1 VRP at 257. A lab later confirmed that the substance in the bag was methamphetamine.

Other detectives assisting with the controlled buy operation confirmed that at the parking lot near the store, Crocker walked over to the window of another vehicle, then returned to the

informant's vehicle, which promptly left to return to the apartments. At the apartment complex, Crocker briefly went inside while the informant waited, then Crocker returned. Crocker "[g]ot back in the vehicle for a few moments and then walked back out and then [the] informant left" for the designated search location. 1 VRP at 290.

The informant also testified at trial. She testified that the trip to the store parking lot was so Crocker could meet her supplier to buy more methamphetamine and that she gave Crocker money to pay her supplier. Back at the apartment complex, Crocker went upstairs to weigh the methamphetamine she had purchased, then returned to the vehicle to give the informant her share.

The State also played portions of the wire recording from the second controlled buy. In the recording, Crocker and the informant discussed the price of methamphetamine, Crocker's arrangement with her supplier, and what amount of methamphetamine the informant was buying. They also discussed splitting the methamphetamine that Crocker got from her supplier.

The jury instructions told the jurors that they were "the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness." Clerk's Papers (CP) at 85. "If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict." CP at 84. The jurors were instructed to avoid conscious or unconscious bias and to not draw conclusions from the lawyers' objections.

The jury acquitted Crocker of one charge for delivery of a controlled substance where there was no audio recording of the transaction, and the charge for possession with intent to deliver. The jury convicted Crocker of two counts of delivery of a controlled substance, including the second

4

controlled buy discussed above, with special verdicts that the deliveries were within 1,000 feet of a school bus route stop.

Crocker appeals.

## ANALYSIS

### I. OPINION TESTIMONY

Crocker argues that the detective gave improper opinion testimony about her guilt, violating her rights under article I, section 21 of the Washington Constitution and the Sixth Amendment to the United States Constitution. The State concedes that the testimony was improper but contends that Crocker was not prejudiced.

Crocker insists the improper testimony was not harmless beyond a reasonable doubt because the only other evidence of the second controlled buy was the informant's testimony, "the drugs she turned over, and the recording." Appellant's Br. at 27. Crocker argues the informant's credibility was weak, "[t]here were questions about whether she was thoroughly searched, and she could have concealed the drugs herself. The recording could be indicating other behavior rather than drugs." Appellant's Br. at 27. Thus, Crocker argues we must reverse the conviction for the second controlled buy. We disagree.

It is inappropriate for a witness in a criminal trial to testify about "opinions, particularly expressions of personal belief, as to the guilt of the defendant, the intent of the accused, or the veracity of witnesses." *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). And "police officers' testimony carries an 'aura of reliability.'" *Id*. at 595 (quoting *State v. Demery*, 144 Wn.2d 753, 765, 30 P.3d 1278 (2001) (lead opinion)). "Permitting a witness to testify as to the defendant's guilt raises a constitutional issue because it invades the province of the jury and

5

the defendant's constitutional right to a trial by jury." *State v. Olmedo*, 112 Wn. App. 525, 533, 49 P.3d 960 (2002). A constitutional error is presumed prejudicial, and the State must show the error was harmless beyond a reasonable doubt through untainted evidence presenting "an overwhelming conclusion of guilt." *Id*.

In determining whether opinion testimony prejudiced a defendant, we consider if and how the jury was instructed, because "[p]roper instructions obviate the possibility of prejudice." *State v. Blake*, 172 Wn. App. 515, 531, 298 P.3d 769 (2012). This court has held that "opinion testimony does not constitute reversible error where the trial court properly instructs the jury . . . that it is the sole judge of witness credibility and not bound by witness opinions." *State v. Curtiss*, 161 Wn. App. 673, 697, 250 P.3d 496 (2011). "Absent evidence that the jury was unfairly influenced, we presume that the jury followed the court's instructions." *Id*. at 698.

Here, assuming without deciding that the detective's statement was an opinion of Crocker's guilt, Crocker cannot show prejudice. Crocker objected and the trial court sustained the objection. When responding, the trial court referred to the requirement that the detective testify only about his personal knowledge. And the detective testified during cross-examination that he did not personally see the transaction take place. The jury was properly instructed that it was the sole judge of each witness's credibility, and "the sole judges of the value or weight to be given to the testimony of each witness." CP at 85. It was also instructed not to consider inadmissible evidence or draw conclusions from parties' objections. Crocker has presented no evidence that the jury was improperly influenced or failed to follow the court's instructions.

And the State offered overwhelming evidence of Crocker's guilt. The confidential informant testified that she and Crocker went to buy methamphetamine from Crocker's supplier,

then they returned to Crocker's apartment building. There, Crocker weighed and separated the informant's portion of the drugs as the informant waited in the parking lot. Other detectives also confirmed Crocker approached the window of another car in the store parking lot before returning to the informant's car. Back at the apartment complex, Crocker was also observed going inside while the confidential informant waited. Detectives confirmed Crocker returned to the car, got in for a few seconds, and got right back out again. Significantly, the jury also heard excerpts of the wire recording where the informant gave Crocker money to pay her supplier, Crocker and the informant talked about the amount of methamphetamine the informant was purchasing from Crocker, and they discussed splitting the drugs. Thus, even if the former detective's statement was improper, Crocker cannot show prejudice.

## II. SAG

Crocker argues that she received ineffective assistance of counsel because she was unable to have in-person contact with her attorney due to the COVID-19 pandemic and she was unable to obtain a copy of her discovery. She also contends that no omnibus hearing occurred, constituting a due process violation.

To demonstrate ineffective assistance of counsel, a defendant must show that their attorney performed deficiently, and that the deficient performance prejudiced the defendant by depriving them of a fair trial. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). When a defendant raises a claim of ineffective assistance on appeal, we may consider only facts within the record. *Id*. at 29. A defendant must file a personal restraint petition if they intend to rely on evidence outside the record. *Id*.

Crocker asked when the omnibus hearing was going to occur and the trial court explained that the parties had treated a previous status hearing as the omnibus hearing. Crocker then stated she had asked her attorney to provide her with her discovery, which she had "been able to look at . . . twice, very briefly." 1 VRP at 76. She told the trial court that she felt impeded in her ability to assist with her own defense. The trial court then continued the trial date by two weeks to give Crocker and her attorney additional time to address any concerns.

At a status conference before the new trial date, Crocker said she wanted to represent herself. She alleged that she had "not had an opportunity to even respond to any of the allegations," and that this prejudiced her. 1 VRP at 93. Her attorney then told the trial court that Crocker had "been given every opportunity to come into our office to review the discovery." 1 VRP at 94. Crocker stated she had only been given one hour to review discovery at her attorney's office. The trial court told Crocker she needed to discuss her issues with her attorney. Crocker did not bring any further issues with her attorney to the court's attention.

By her own admission, Crocker had several opportunities to review her discovery. And she does not show how having her own copy of the discovery would have changed the result of the trial. She also does not show how additional in-person contact with her attorney would have changed the result of her trial. Nor does she establish that the trial court failed to hold an omnibus hearing or that her due process rights were violated. Without more, these claims fail.

CONCLUSION

We affirm Crocker's convictions.

8

No. 56047-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Glasgow, CJ_____
Glasgow, C.J.

We concur:

_Maxa, J_____
Maxa, J.

_Cruser, J_____
Cruser, J.