# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56386-0-II |
| Respondent, | |
| v. | |
| JERALD LEON BAKER, JR., | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Jerald Leon Baker Jr. appeals his conviction for second degree assault by strangulation. Baker argues that (1) the trial court erred in admitting expert testimony regarding strangulation, (2) the expert witness gave an improper opinion of Baker's guilt, and (3) the trial court erred in imposing a $500 victim penalty assessment (VPA) and supervision fees as a condition of community custody. We affirm Baker's conviction and the imposition of the $500 VPA, but remand to the trial court to strike the supervision fees.

## FACTS

I. BACKGROUND FACTS

Baker met and began dating R. Johnson in 2019. Their relationship began to get "rocky" in early 2020. 1 Verbatim Report of Proceedings (VRP) (Sept. 1, 2021) at 93. In May 2020, Johnson drove to Baker's home to cook dinner and spend the night. She had with her a purse, work clothes, and some items for school. After eating dinner, Baker and Johnson got into an argument and Johnson decided to leave. Johnson went outside to her car, but when she discovered

it was locked, she asked Baker to return her things, which included her car keys, so she could leave. Baker refused, closed the door to his home, and locked Johnson outside.

Johnson got in Baker's truck to lay down, hoping to wait there until Baker unlocked the door to his home so she could retrieve her things. After some time, Baker left the home to look for Johnson on his bicycle. Johnson remained laying down in the truck. Once Baker left the area on the bicycle, she quietly got out of the truck and tried to enter the home to retrieve her things, but the home remained locked. As Johnson was returning to the truck, Baker spotted her and the two began arguing again.

Johnson tried to return to the backseat of the truck, but Baker told her to leave or he would call the police. Johnson refused, and Baker then reached into the truck to attempt to pull Johnson out, grabbing her by her shoulder and clothes. Unable to pull Johnson out of the truck, Baker got into the backseat with her. As they continued arguing, Baker attacked Johnson, grabbing her from behind and putting his forearm around her neck with his hand holding his other arm. Johnson tried to pull Baker's hands off of her, telling him to stop because he was hurting her and she could not breathe. Baker told her he did not care and that "nobody would find [her] out [t]here." 1 VRP (Sept. 1, 2021) at 118. Johnson began to see spots, but did not blackout. After about a minute, Baker stopped putting pressure on her neck, but Johnson's face remained on the bench seat as Baker continued to hold her head down.

Frightened, Johnson began apologizing to Baker, causing Baker to finally let her go. They both got out of the truck and returned to Baker's home, where Johnson noticed she had a scrape across her face and was bleeding. Later, after secretly finding her car keys, Johnson snuck out of the home and drove away.

2

Following a brief stop at a gas station to look for help, Johnson drove herself to an emergency room just before midnight. While Johnson explained what happened, the emergency room doctor examined her and took photographs. Johnson went home directly after the examination without filing a police report.

Two days later, Johnson filed a police report. Law enforcement interviewed her and took photographs of her injuries. Baker was then arrested and charged with second degree assault by strangulation and fourth degree assault, with special allegations of domestic violence against an intimate partner for each count.

The case proceeded to a jury trial.

II. THE TRIAL

A. MOTIONS IN LIMINE

Prior to trial, the State filed a motion in limine to admit expert testimony under ER 702 on the topic of strangulation from registered nurse, Lynne Berthiaume. Providing an offer of proof as to Berthiaume's expected testimony, the State argued she was qualified as an expert on strangulation and her testimony would be helpful to the jury. Berthiaume's testimony would explain how strangulation occurred, as well as common symptoms and injuries that result from strangulation, and why those injuries may not be immediately visible after the attack. The State argued this testimony would be helpful for the jury to understand the State's evidence of Johnson's alleged strangulation, which included how Johnson's body reacted during and after the incident, and whether this was consistent with the definition of strangulation. The State said this testimony would differ from the emergency room doctor's testimony because he would be testifying as a fact witness about his observations on the night of his examination, not as an expert witness. The State

also sought permission for Berthiaume to express her expert opinion that, based on her review of the reports and photographs, Johnson had, in fact, been strangled.

Baker objected, generally arguing that Berthiaume should not be allowed "to testify as an expert witness." 1 VRP (Aug. 31, 2021) at 36. Baker specifically argued that the expert testimony was not necessary because the testimony was both cumulative and confusing. Baker said the testimony was cumulative because the doctor who treated Johnson at the emergency room the night of the attack was going to testify and would likely give similar testimony as Berthiaume, including the explanation of specific medical terms associated with strangulation and photographs taken of Johnson's injuries. Baker also argued the testimony was confusing because it could imply the emergency room doctor was "negligent in collecting history from . . . Ms. Johnson" and would force the jury to decide between believing the expert or the emergency room doctor. 1 VRP (Aug. 31, 2021) at 34. He further argued Berthiaume's testimony regarding signs of strangulation could confuse the jury because those signs would not necessarily appear in any of her medical records from the night of the attack. Baker made no other specific arguments about Berthiaume's proposed testimony.

The trial court granted the motion in limine, deciding that, assuming the State could lay the proper foundation, Berthiaume could testify as an expert witness under ER 702 because her testimony would assist the jury. The trial court stated,

> [B]ecause the State has the burden of proof . . . they should be able to call an expert . . . because it is so central to what they have to prove . . . [her testimony] is focusing on strangulation, whereas the general treating physician was looking at the whole person trying to figure out what was ailing her. . . . [I]t's not really cumulative in the sense that [Berthiaume] is focusing on the issue of strangulation . . . [her] testimony will be admissible because it will assist the trier of fact, the jury, in viewing the evidence.

1 VRP (Aug. 31, 2021) at 37-38.

B. TRIAL TESTIMONY

Johnson testified to the facts presented above.

Also testifying at trial was Dr. Daniel Stewart, the emergency room doctor who treated Johnson the night of the attack. Dr. Stewart explained Johnson arrived at the emergency room the night of the attack because of pain in her neck, face, inner thigh, and upper arm due to a physical assault. He noticed swelling on her neck and bruising on her arms and back. Dr. Stewart explained Johnson's injuries to the jury with several of the photographs taken during the examination. He diagnosed Johnson with injuries from physical assault and further said that her injuries "would be consistent with what would appear with strangulation . . . ." 4 VRP (Sept. 14, 2021) at 474.

On cross-examination, Dr. Stewart testified he did not know what caused Johnson's scratches on her face. He further explained it was possible the swelling injuries on Johnson's neck could have been caused by a blunt instrument, and that a vigorous strangulation was not the only potential cause of the injuries.

Sheriff's Deputy Jennifer Wade testified she responded to Johnson's report and took pictures of Johnson's injuries that day. She explained the photographs showed some bruising and scratch marks on Johnson's neck, face, chest, thigh, and lips.

Finally, consistent with the State's motion in limine, Berthiaume testified as an expert witness. Berthiaume testified she was hired to consult on Johnson's case and had reviewed the police report, the victim's written statement, medical records, and photographs taken by law enforcement and the emergency room doctor. She explained her qualifications as a registered nurse and her professional experience with domestic violence injuries, including specialized training in strangulations. Berthiaume testified about the medical difference between choking and strangulation and that patients often confuse the two. She also explained that vigorous

strangulation can also lead to petechial hemorrhaging, "little pin-point red marks," which occurs when the blood vessels burst due to excessive force and that the lack of blood flow from strangulation, or a "choke hold," could lead to death. 3 VRP (Sept. 13, 2021) at 321-22.

Berthiaume said most strangulation victims did not present injuries on the first day given that people bruise differently. But the more "vigorous" the strangulation, the sooner bruising and injuries presented. 3 VRP (Sept. 13, 2021) at 320. Bruising on the neck, chin, eyes, face, and lips were common in vigorous strangulations, as well as a raspy voice, difficulty breathing, seeing spots, and ringing in the ears. She further said the fold of a person's elbow could cause strangulation when used in a "choke hold." 3 VRP (Sept. 13, 2021) at 322.

Using photographs of Johnson's injuries taken at the emergency room, Berthiaume explained that Johnson's injuries indicated swelling and some bruising of the neck and petechial hemorrhaging on the face. Using photographs taken by law enforcement two days after the attack, Berthiaume explained that Johnson's injuries also indicated bruising of the neck, chin, and head, and the injuries were consistent with strangling someone with the "crook of the elbow." 3 VRP (Sept. 13, 2021) at 332.

At the end of her testimony, the State asked Berthiaume to compare Johnson's injuries with injuries from a typical case. The prosecutor asked,

> In your experience evaluating and treating victims of strangulation, how would you compare the injuries that you observed on Ms. Johnson to those in a typical case?

3 VRP (Sept. 13, 2021) at 335. Berthiaume responded with the following statement,

> I would say that she sustained a vigorous strangulation, definitely.

3 VRP (Sept. 13, 2021) at 335.

Baker did not object at any point during Berthiaume's testimony at trial.

Baker did not testify at trial. He called one witness in his defense, his girlfriend Teresa Nygrin, who testified Baker's home was surrounded by thorn bushes and debris. She also testified that the back of Baker's truck was often full of storage items, including work items, buckets, helmets, and boots, which were all in the back of Baker's truck one day after the attack.

C. Jury Instructions, Closing Argument, Verdict and Sentencing

The case went to the jury with one count of assault in the second degree and one count of assault in the fourth degree. The trial court instructed the jury that "a person commits the crime of assault in the second degree when he or she assaults another by strangulation." Clerk's Papers (CP) at 57. " 'Strangulation' means to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe." CP at 59.

At closing argument, Baker argued he did not strangle Johnson, but instead that it was possible Johnson's injuries were caused by being held down against the items in his truck and her face scratches were caused by the thorn bushes near his home.

The jury found Baker guilty on both assault counts, with special verdicts of domestic violence against an intimate partner for both counts.

The trial court sentenced Baker to 57 months confinement, with 18 months community custody.[1] The trial court ruled Baker was an indigent defendant and would therefore "waive the nonmandatory discretionary costs and fines." 7 VRP (Oct. 1, 2021) at 649. The resulting judgment and sentence imposed a $500 victim penalty assessment and required Baker to pay supervision fees as ordered by the Department of Corrections for his community custody.

---

[1] Prior to sentencing, the trial court vacated Baker's fourth degree assault conviction to avoid double jeopardy.

7

Baker appeals.

ANALYSIS

I. EXPERT TESTIMONY OF BERTHIAUME

Baker makes two arguments related to the expert testimony of Berthiaume. First, Baker argues that the trial court erred by generally permitting Berthiaume to testify as an expert witness. Second, Baker argues that a specific portion of Berthiaume's testimony was an improper opinion of guilt.

A. ADMISSION OF BERTHIAUME TESTIMONY GENERALLY AS AN EXPERT

Baker argues the trial court erred in allowing Berthiaume to testify generally as an expert witness because her testimony was not helpful to the jury, and alternatively, because it was cumulative and confusing. The State responds that Baker waived the issue of helpfulness to the jury because he did not object on those grounds at trial and, further, that the testimony was neither cumulative nor confusing. We agree with the State.

1. Legal Principles

"A party may assign evidentiary error on appeal only on a specific ground made at trial." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Failure to raise an objection at the trial court on the specific grounds raised on appeal waives the objection. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986); *see* ER 103(a)(1). However, review of admissibility of expert testimony may be preserved for appeal even though a defendant did not object to any specific rule of evidence if it is evident what the substance of the objection was. *See State v. Heng*, 22 Wn. App. 2d 717, 747, 512 P.3d 942 (2022) (review of expert testimony under ER 702 was preserved for appeal even though the defendant did not object under ER 702

specifically because "the clear thrust of counsel's argument was that [the expert's] testimony was inadmissible because it was unreliable").

ER 702 governs the admission of expert testimony. *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 168, 288 P.3d 1140 (2012). ER 702 states,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Expert testimony is admissible if " '(1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact.' " *In re Morris*, 176 Wn.2d at 168-69 (quoting *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984)). Expert testimony is helpful to the jury if the testimony is not common knowledge for the average layperson and is not misleading. *State v. Groth*, 163 Wn. App. 548, 564, 261 P.3d 183 (2011), *review denied*, 173 Wn.2d 1026 (2012).

Expert testimony that is otherwise admissible may be excluded under ER 403 if it is "confusing, misleading, or if the danger of unfair prejudice outweighs its probative value." *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994); ER 403.

The trial court has discretion whether or not to admit expert testimony. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). We review a trial court's admission or rejection of expert testimony for an abuse of discretion. *Id.* "A trial court abuses its discretion when its decision is manifestly unreasonable, or when it is based on untenable grounds or untenable

reasons." *State v. Pratt*, 11 Wn. App. 2d 450, 462, 454 P.3d 875 (2019), *aff'd*, 196 Wn.2d 849 (2021).

    2. Application

Baker argues the trial court erred in generally permitting Berthiaume to testify as an expert for two reasons. First, Baker argues the testimony was not helpful to the jury as required by ER 702. Baker contends that because a jury can understand strangulation based on "their common sense and experience," the jury did not need expert testimony to evaluate the evidence. Br. of Appellant at 19. Second, Baker argues Berthiaume's testimony was cumulative, confusing, and prejudicial.[2]

    a. Helpfulness to the Jury under ER 702

As to Baker's contention that Berthiaume's testimony was not sufficiently helpful to the jury to be admissible, the State argues Baker waived this issue. According to the State, Baker only argued below that Berthiaume's testimony was cumulative and confusing, not that it was unhelpful to the jury due to the topic being within common understanding.

The State is correct. In response to the State's motion in limine before the trial court, Baker articulated his specific objections as the testimony being cumulative with Dr. Stewart's and confusing because Berthiaume did not actually examine Johnson. Baker made no argument that the testimony was not helpful to the jury. Although Baker initially phrased his objection generally, asking the court "not allow . . . Berthiaume to testify as an expert witness," his actual objections focused solely on its cumulative and confusing nature under ER 403, not the requirement for helpfulness under ER 702. 1 VRP (Aug. 31, 2021) at 36. Because Baker failed to make an

---

[2] Baker does not argue Berthiaume was not qualified as an expert, nor that her testimony was not based on theory generally accepted in the scientific community.

objection to the trial court for exclusion of this testimony under ER 702's requirement for helpfulness to the jury, we decline to review this basis for Baker's objection raised here for the first time.

However, even if we review this basis, Baker's argument fails. The State's offer of proof for the motion in limine clearly shows the testimony would have been helpful to the jury. While it is true that the jury was instructed on the legal definition of strangulation, Berthiaume's testimony explained to the jury how to recognize the physical signs of strangulation. The testimony explained how strangulation occurs and its medical effects and symptoms. Berthiaume also reviewed exhibits and described Johnson's bruising and injuries through the lens of her expertise. From the State's offer of proof at the motion in limine, it was not an abuse of discretion to conclude that all of these issues are likely beyond the average person's common knowledge about strangulation and, therefore, would be helpful to the jury.

b. Cumulative and Confusing

Baker also argues Berthiaume's testimony was inadmissible because it was cumulative, confusing, and prejudicial. Unlike Baker's argument about helpfulness to the jury, Baker did argue to the trial court the concepts of cumulativeness and confusion of this testimony.[3]

As for cumulativeness, Baker contends Berthiaume testified about the same photographs to which Dr. Stewart testified and that both were medical professionals with overlapping areas of testimony. As for confusion, Baker contends Berthiaume's testimony was confusing because it

---

[3] Before the trial court, Baker never made a separate argument that Berthiaume's testimony was unfairly prejudicial. Although unfair prejudice arguably permeates the other specific bases Baker cited to the trial court, Baker's failure to raise the specific objection below means we still decline to review it. *See Kirkman*, 159 Wn.2d at 926.

conflicted with Dr. Stewart's testimony and confused the terms "chok[e]" and "strangul[ation]" by her use of the term "chokehold." Br. of Appellant 21. We reject both arguments.

Regarding cumulativeness, the trial court ruled that Berthiaume's testimony focused on strangulation, while Dr. Stewart's testimony was "looking at the whole person trying to figure out what was ailing [Johnson]." 1 VRP (Aug. 31, 2021) at 37. Dr. Stewart would be called not as an expert witness, but as a fact witness to discuss his direct observations of Johnson's injuries and the general process for admitting her to the emergency room. Berthiaume would instead testify to the general causes and specific effects of strangulation as well as her expert opinion of Johnson's injuries from the reports and photographs. While there likely would be some overlap between the testimonies considering Berthiaume reviewed the photographs and interviews taken of Johnson in the emergency room, the purpose of their testimony was sufficiently different. Berthiaume's testimony was not inadmissibly cumulative.

Additionally, Baker's argument for why the offered testimony was confusing is not persuasive. At the motion in limine hearing, Baker argued Berthiaume's testimony could confuse the jury because it would contradict Dr. Stewart's testimony of his diagnosis and observations in her medical records from the night of the attack. But, again, the purpose of their testimonies was different. Dr. Stewart would testify from his perspective as an emergency room physician to his general observations of Johnson's injuries from his physical examination. Berthiaume would provide additional medical information about strangulation, including information about strangulation injuries that do not appear immediately. Rather than confuse, the information would provide additional information to the jury relevant to its determination of the facts of the case. Additionally, if Baker disagreed with Berthiaume, cross-examination was always available to him.

Based on the record, the trial court did not abuse its discretion by permitting Berthiaume to testify as an expert.

B. IMPROPER OPINION OF GUILT

Separate from Baker's argument that Berthiaume's expert testimony was generally inadmissible, Baker also argues that a specific statement from Berthiaume constituted an improper opinion about his guilt. The State responds that Baker failed to object below and cannot show the statement rises to the level of a manifest constitutional error. We agree with the State.

1. Legal Principles

Both lay and expert witnesses may not testify as to a defendant's guilt because an "improper opinion undermines a jury's independent determination of the facts, and may invade the defendant's constitutional right to a trial by jury." *State v. Olmedo*, 112 Wn. App. 525, 530-31, 49 P.3d 960 (2002), *review denied*, 148 Wn.2d 1019 (2003). Whether testimony opines on a defendant's guilt is dependent on each case's circumstances. *State v. Baird*, 83 Wn. App. 477, 485, 922 P.2d 157 (1996), *review denied*, 131 Wn.2d 1012 (1997).

Under ER 704, "testimony is not objectionable simply because it embraces an ultimate issue the trier of fact must decide." *State v. Hayward*, 152 Wn. App. 632, 649, 217 P.3d 354 (2009); *see* ER 704. "The fact that an opinion encompassing ultimate factual issues supports the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt." *Heatley*, 70 Wn. App. at 579 (emphasis omitted). For example, in *Hayward*, an emergency room doctor testified that the victim in an assault sustained "temporary but substantial loss or impairment o[f] the function of a body part." 152 Wn. App. at 639 (alteration in original) (internal quotation marks omitted). Even though substantial bodily harm was an ultimate issue the jury needed to determine, the court said this was not an impermissible opinion of guilt because the witness's

testimony did not directly "include any discussion of [the defendant] or his participation in the injury." *Hayward*, 152 Wn. App. at 651.

We may decline to review claims of error raised for the first time on appeal. RAP 2.5(a)(3). A defendant may raise an issue for the first time on appeal if the error is a manifest error that affects a constitutional right. RAP 2.5(a)(3). If the error affects a constitutional right, we then look to whether the error is manifest. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). An error is manifest if the defendant can show actual prejudice. *Id.* The burden is on the defendant to show the error is both manifest and of constitutional magnitude. *State v. Knight*, 176 Wn. App. 936, 950-51, 309 P.3d 776 (2013), *review denied*, 179 Wn.2d 1021 (2014).

Although opinion testimony regarding victim credibility implicates the constitutional right to a jury trial, it is not necessarily manifest constitutional error. *Kirkman*, 159 Wn.2d at 927. " 'Manifest error' requires a nearly explicit statement by the witness that the witness believed the accusing victim." *Id.* at 936. The requirement in this context for an explicit or almost explicit witness statement of the defendant's guilt reflects that "the manifest error exception is narrow." *Id.*

2. Application

Baker argues Berthiaume improperly provided her opinion of his guilt when she stated at the conclusion of her testimony, "I would say that she sustained a vigorous strangulation, definitely." 3 VRP (Sept. 13, 2021) at 335. Baker contends that because strangulation was an element of the case the jury needed to determine, this statement was improper.

But because Baker did not object to this statement at trial, even if admission of this statement was constitutional error, he must show it was a manifest error. As explained above, a

manifest error in this context requires a showing that Berthiaume's testimony was a "nearly explicit statement" regarding his guilt. *Kirkman*, 159 Wn.2d at 936.

Baker argues Berthiaume's statement meets this requirement, relying on *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987) and *State v. Hudson*, 150 Wn. App. 646, 208 P.3d 1236 (2009). In *Black*, our Supreme Court held that testimony from an expert witness that the victim showed signs of "rape trauma syndrome" was an improper opinion of guilt in a third degree rape trial because "[rape trauma syndrome] carries with it an *implied opinion* that the alleged victim is telling the truth and was, in fact, raped." 109 Wn.2d at 349 (emphasis added). In *Hudson*, the court ruled statements by an expert witness that the victim's injuries were caused by nonconsensual sex was an explicit statement of the defendant's guilt in a third degree rape trial because the defendant did not dispute that his actions had caused the injuries. 150 Wn. App. at 653.

Neither *Black* nor *Hudson* are helpful here. In *Black*, the defendant objected to the expert's statement at trial and, therefore, he did not need to show the error was manifest—only the much lower showing that the statement was an *implied* statement of his guilt. Because Baker must show a nearly explicit statement of his guilt, *Black* provides no guidance.

*Hudson* also fails to apply. There, the court ruled the witness's statement that the victim's injuries were the result of nonconsensual sex was an improper opinion about the defendant's guilt when the defendant had also admitted he had caused her injuries. Because coupling the defendant's admissions with the expert's opinion effectively decided for the jury that the defendant was guilty of rape, admitting the testimony was error. But here, Baker did not entirely admit his involvement in Johnson's injuries. Baker argued Johnson could have been injured by the objects in his car and the thorn bushes on his property. Therefore, unlike the testimony in *Hudson*,

Berthiaume's statements about Johnsons' injuries cannot be coupled with Baker's own admissions to form a nearly explicit statement on Baker's guilt.

This case is more similar to the facts in *Hayward*. In both cases, only opinions about the victims' injuries were presented and the expert witnesses made no statements about the defendants' actions with relation to those injuries. Although whether Baker strangled Johnson was an ultimate issue the jury was required to decide, Berthiaume said nothing about Baker's potential involvement in Johnson's injuries, only that the injuries were consistent with other strangulations. As in *Hayward*, Berthiaume's statement falls short of being a nearly explicit statement of guilt.

Because Berthiaume's testimony was not a nearly explicit statement regarding Baker's guilt, admission of her testimony was not a manifest constitutional error. Therefore, Baker fails to establish an error that we may review for the first time on appeal.

II. VICTIM PENALTY ASSESSMENT

Baker argues the VPA violates the excessive fines clause of the United States Constitution and article I, section 14 of the Washington Constitution. We disagree.

A. LEGAL PRINCIPLES

The Eighth Amendment's excessive fines clause " 'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.' " *City of Seattle v. Long*, 198 Wn.2d 136, 159, 493 P.3d 94 (2021) (internal quotation marks omitted) (quoting *Austin v. United States*, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993)). The Eighth Amendment applies when there is a "fine" and that fine is "excessive." *Id.* at 162. The fine must be a punishment to trigger Eighth Amendment protections, and the fine must be " 'grossly disproportional to the gravity of the offense.' " *Id.* (quoting *United States v. Bajakajian*, 524 U.S.

321, 324, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998)).  A partial punishment triggers the excessive fines clause of the Eighth Amendment.  *Id.* at 163.

B.  APPLICATION

Pointing to the plain language of the statute that labels the VPA a "penalty," Baker argues that the excessive fines clause applies to the VPA.

This issue has been decided.  The VPA is "not punitive in nature."  *State v. Mathers*, 193 Wn. App. 913, 920, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016).  Further, our State Supreme Court has held that the VPA "is neither unconstitutional on its face nor as applied to indigent defendants."  *State v. Curry*, 118 Wn.2d 911, 918, 829 P.2d 166 (1992).  Although Baker argues we should reject *Curry*, we must follow the established precedent that the VPA is constitutional.  *See State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984) (Supreme Court's decision on issue of state law binds all lower courts until that court reconsiders).  Baker's claim fails.

III.  SUPERVISION FEES

Baker argues the trial court erred in imposing supervision fees as a condition of community custody because the trial court did not intend to impose discretionary legal financial obligations. The State concedes the trial court intended to waive all the non-mandatory discretionary costs and fines and, therefore, erred in imposing the discretionary supervision fees.  We accept the State's concession and remand to the trial court to strike the supervision fees.

No. 56386-0-II

CONCLUSION

We affirm Baker's conviction, but remand to the trial court to strike the supervision fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, A.C.J.

CHE, J.

18